Kevin J. Windels (KJW-5477)
Stephen F. Willig (SFW-9847)
D'AMATO & LYNCH, LLP
70 Pine Street
New York, New York 10270
Phone: (212) 269-0927
Facsimile: (212) 269-3559
kwindels@damato-lynch.com
swillig@damato-lynch.com

*Attorneys for Defendant/Appellant*
ILLINOIS NATIONAL
INSURANCE COMPANY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

|  |  |
|---|---|
| In re | Chapter 11 |
|  | Case No. 05-60006 (RDD) |
| REFCO. INC. et al., | (Jointly Administered) |
| Debtors. | |

------------------------------------------------------------x

|  |  |
|---|---|
| TONE N. GRANT, | Adv. Proc. No. 08-1129-rdd |
| Plaintiff/Appellee, | |
| -against- | Civil Action No. 08-CV-04252 (GEL) |
| ILLINOIS NATIONAL INSURANCE COMPANY AND NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., | |
| Defendant/Appellant. | |

------------------------------------------------------------x

**DEFENDANT/APPELLANT ILLINOIS NATIONAL INSURANCE COMPANY'S BRIEF IN SUPPORT OF ITS APPEAL OF THE BANKRUPTCY COURT'S ORDER GRANTING PLAINTIFF A PRELIMINARY INJUNCTION**

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES...................................................................iii

BASIS OF APPELLATE JURISDICTION................................................. 1

ISSUES PRESENTED ........................................................................ 1

STANDARD OF APPELLATE REVIEW.................................................. 3

STATEMENT OF THE CASE............................................................... 3

    A.   Nature of The Case ................................................................. 3

    B.   Proceedings and Disposition Below: ........................................... 4

        1.   The Refco Fraud ............................................................. 4
        2.   Bennett, Trosten and Maggio Plead Guilty............................. 4
        3.   The Superseding Indictment and Conviction of Grant................. 5
        4.   The Coverage Dispute with Illinois National and Other Carriers.... 7

            a.   The Insurance Tower ................................................. 7
            b.   The Illinois National Policy and its Coverage Position.......... 8
            c.   This Lawsuit and the Court's Prior Ruling........................ 12

    C.   The Basis for Reversal of the Order .......................................... 13

ARGUMENT
POINT I
THE COURT BELOW ERRED IN GRANTING THE PRELIMINARY
INJUNCTION BECAUSE GRANT DID NOT ESTABLISH COVERAGE,
AND THERE IS NO DUTY BY ILLINOIS NATIONAL TO ADVANCE
DEFENSE COSTS.......................................................................... 16

    A.   Coverage is Excluded Under the Application............................... 16
    B.   The Criminal, Fraudulent and Dishonest Acts Exclusion is Applicable .......... 20
    C.   The Court's Consideration of Extrinsic Evidence if Proper............. 22
    D.   The Absence of Coverage Precludes the Advancement of Defense Costs...... 23

POINT II
THE COURT BELOW ERRED IN GRANTING EXTRAORDINARY
RELIEF AS THE REQUIREMENTS NECESSARY FOR A PRELIMINARY
INJUNCTION AGAINST ILLINOIS NATIONAL WERE NOT MET...................... 25

    A.   This Extraordinary Relief Should Not Have Been Granted............. 25

B.    Plaintiff Cannot Establish A Likelihood of Success on the Merits ................................. 30

CONCLUSION.................................................................................................................... 32

# TABLE OF AUTHORITIES

## FEDERAL CASES

2575 Owners Corp. v. Federal Insurance Co.,
    1998 WL 846123 (S.D.N.Y. 1998)................................................................20, 30, 31

American Casualty Co. v. United Southern Bank,
    950 F.2d 250 (5th Cir. 1992) ................................................................................21

Avondale Industries v. Travelers Indemnity Co.,
    774 F. Supp. 1416 (S.D.N.Y. 1991)................................................................22, 23

Cement and Concrete Workers District Council Pension Fund
    v. Ullico Casualty Co., 387 F. Supp. 2d 175 (E.D.N.Y. 2005)....................................29

Coregis Insurance Co. v. Lewis Johns,
    2006 WL 2135782 (E.D.N.Y. 2006)........................................................................31

Coregis Insurance Co. v. Lyford,
    21 F. Supp. 2d 695 (S.D. Tex. 1998) .........................................................................31

Greenwich Insurance v. Lecstar,
    2006 WL 2052375 (N.D. Ga. 2006) ....................................................................20, 36

IBM v. Liberty Mutual,
    363 F.3d 137 (2nd Cir., 2004).................................................................................28

In re WorldCom, Inc., Sec. Litigation,
    354 F. Supp. 2d at 455 (S.D.N.Y. 2005).................................................................24, 28

Javaraj v. Scappini,
    66 F.3d 36 (2d Cir. 1995).......................................................................................25, 26

McCauley Enterprises, Inc. v. New Hampshire
    Insurance Co., 716 F. Supp. 718 (D.Conn. 1989).......................................................31

McGinniss v. Employers Reinsur. Corp.,
    648 F. Supp. 1263 (S.D.N.Y. 1986).........................................................................18

Medical Social of N.Y. v. Toia,
    560 F.2d 535 (2d Cir. 1977).....................................................................................25

Metropolitan Life v. RJR Nabisco,
    906 F.2d 884 (2nd Cir. 1990)..................................................................18

Micro Strategy, Inc. v. Motorola, Inc.,
    245 F.3d 335 (1st Cir. 2001)..................................................................27

National Union Fire Insurance Co. of Pittsburgh, Pa.
    v. Continental Illinois Corp., 666 F. Supp. 1180 (N.D. Ill. 1987) ...............21

New Castle County v. Hartford Accident
    & Indemnity Co., 970 F.2d 1267 (3rd Cir. 1992) .........................................17

Steadfast Insurance Co. v. Stroock & Stroock
    & Lavan, LLP, 277 F. Supp. 2d 245 (S.D.N.Y. 2003) ...........................21, 24

Stonewall Insurance v. Asbestos Claims Management,
    73 F.3d 1178 (2nd Circuit 1995)..............................................................23

Tucker Anthony Realty v. Schlesinger,
    888 F.2d 969 (2nd Cir. 1989) ..................................................................26

## STATE CASES

Aetna Casualty & Surety Co. v. Liberty Mutual
    Insurance Co., 91 A.D.2d 317 (4th Dep't 1983) ....................................18, 36

Consolidated Edison v. Allstate,
    98 N.Y.2d 208 (2002) ............................................................................24

E.I. DuPont DeNemours & Co. v. Admiral Ins. Co.,
    711 A.3d 45 (Sup. Ct. Del. 1995) ...........................................................19

Federal v. Tyco,
    2004 WL 583829 (N.Y. Supreme Ct., NY Cty. 2004) ...........................24, 28

Federal Ins. Co. v. Kozlowski,
    18 (A.D.3d 33 (1st Dep't 2005)...............................................................28

Federal Ins. Co. v. Tyco,
    Index No. 600507/03, Supreme Court of the State of New York,
    NY Cty., August 10, 2006) ....................................................................29

Fuchsberg & Fuchsberg v. Chicago Insurance Co.,
    2001 WL 414013 (S.D.N.Y. 2001)........................................................23, 36

Great American Insurance v. Gross,
    2005 WL 1048752 (E.D. Va. 2005)................................................................17, 27, 36

Maroney v. New York Central Fire Ins. Co.,
    5 N.Y.3d 467 (2005) ................................................................................................18

Metro Heat & Power v. AIG Claims,
    47 (A.D.3d 621 (2nd Dep't 2008).............................................................................24

National Union v. State Insurance Fund,
    18 A.D.3d 202 (1st Dep't 2005) ...............................................................................23

Northville Industrial v. National Insurance,
    89 N.Y.2d 621 (1997) ........................................................................................22, 30

Purdue Frederick Co. v. Steadfast Insurance Co.,
    2005 WL 1662028 (Sup. Ct., N.Y. Co. 2005) ........................................................18

Sturges Manufacturing Co. v. Utica Mutual Insurance Co.,
    37 N.Y.2d 69 (1975) ................................................................................................22

United States Fire Insurance Co. v. New York Marine and General
    Insurance Co., 268 A.D.2d 19 (1st Dep't 2000)......................................................18

Vigilant Insurance v. Credit Suisse,
    10 A.D.3d 528 (1st Dep't 2004) ...............................................................................23

Villa Charlotte Bronte, Inc. v. Commercial Union Insurance Co.,
    64 N.Y.2d 846 (1985) ..............................................................................................30

## FEDERAL STATUTES

28 U.S.C. 158(a)(3)...........................................................................................................1

28 U.S.C. § 1292(b) ...........................................................................................................1

## MISCELLANEOUS

Handbook on Insurance Coverage Disputes,
    Ostrager and Newman, §20.02 (14th ed. 2008)........................................................30

v



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

In re                                               :     Chapter 11
                                                    :     Case No. 05-60006 (RDD)
REFCO. INC. et al.,                                 :     (Jointly Administered)
                                                    :
                      Debtors.                      :

-----------------------------------------------------------X

                                                    :
TONE N. GRANT,                                      :     Adv. Proc. No. 08-1129-rdd
                                                    :
                      Plaintiff/Appellee,           :
                                                    :
           -against-                                :     Civil Action No. 08-CV-04252 (GEL)
                                                    :
ILLINOIS NATIONAL INSURANCE                         :
COMPANY AND NATIONAL UNION FIRE                     :
INSURANCE COMPANY OF PITTSBURGH,                    :
PA.,                                                :
                                                    :
                      Defendant/Appellant.          :

-----------------------------------------------------------x

## BASIS OF APPELLATE JURISDICTION

The District Court has jurisdiction of the appeal based upon 28 U.S.C.

§158(a)(3) and 28 U.S.C. §1292(b).

## ISSUES PRESENTED

1.      Was the Bankruptcy Court correct in granting the Application of

Plaintiff Tone N. Grant for a Preliminary Injunction ordering Illinois National Insurance

Company ("Illinois National") to advance Tone Grant's defense costs under the terms of the

director and officer liability policy issued to Refco when the application for the policy,

signed by Refco's president Philip Bennett, warranted that:

1

9.    (a)  No Director or Officer has knowledge or information of any act, error or omission, which might give rise to a claim under the proposed policy except as follows:  (Attach complete details.  If they have no such knowledge or information, check here:  "none"  _X_ )

(b)  Neither the Applicant nor any of its Subsidiaries has knowledge or information of any act, error or omission which might give rise to a securities claim under the proposed policy except as follows:  (Attach complete details.  If they have no such knowledge or information, check here:  "none"  _X_ )

It is agreed that with respect to Questions 9 and 10 above, if such knowledge, information or involvement exists, any claim or action arising therefrom is excluded from the proposed coverage;

and the application (containing representations material to the risk) was incorporated into the policy; where Bennett's unconditional and complete plea of guilty to all 20 counts of a federal indictment against him by which he necessarily admitted the statements made in the application were false; where the "actions" against Grant for which he sought advancement of defense costs (including a superseding indictment issued after Bennett's guilty plea) all arise out of the "knowledge" and "information" withheld by the applicant; and where Grant was unable to demonstrate that any action for which he sought advancement of defense costs was covered under the policy issued by Illinois National?

2.    Based on Illinois National's letter application of May 21, 2008, the Court, via Order dated June 3, 2008, has expanded the Record on Appeal to include, among other things, the court transcript reflecting Grant's criminal conviction in the S-4 Indictment. Consequently, Illinois National also presents herein the issues of whether the Grant conviction on all counts confirms the connection between the "knowledge or information of acts, errors or omissions" falsely denied in the Application and the actions for which Grant

2

seeks advancement of defense costs, and whether the Grant conviction confirms that Grant

cannot establish coverage for those actions which would entitle him to advancement.

## STANDARD OF APPELLATE REVIEW

On an appeal from an Order of the Bankruptcy Court, a District Court must

review the Bankruptcy Court's legal conclusions on a de novo basis and its factual findings

on a clearly erroneous basis.

## STATEMENT OF THE CASE

### A.    Nature of The Case

This is an insurance coverage dispute between plaintiff, Tone N. Grant, and

Illinois National.  Illinois National issued to Refco Group, Ltd., LLC ("Refco") a Directors,

Officers and Private Company Liability Insurance policy (Policy No.: 931-75-64) with a

Policy Period of January 24, 2004 to January 24, 2005 and a Limit of Liability of $5,000,000

providing runoff coverage for acts committed on or prior to August 5, 2004 ("the Policy").

Grant seeks coverage under the Policy, particularly advancement of his defense costs, for

several civil litigations in which he is a defendant and for a criminal action which was about

to be tried at the time of the decision upon which the appeal is based (and at which he was

subsequently found guilty on all counts).  Up to the time Grant filed this action, he had been

reimbursed for defense costs under a separate tower of insurance.

3

**B.      Proceedings and Disposition Below:**

**1.      The Refco Fraud**

Shortly after an initial public offering was made on August 10, 2005, it was revealed that over a seven-year period, starting at least as early as 1998, Refco, Inc. hid hundreds of millions of dollars of uncollectible receivables that should have appeared on Refco's balance sheets. This massive fraud, in which plaintiff Grant, Phillip Bennett and other Refco directors and officers actually participated (now an established fact as to Bennett and Grant), led to Refco's announcement in October 2005, just two months after going public, that its prior financial statements could no longer be relied upon.[1] On October 17, 2005, Refco filed for bankruptcy protection in the U.S. Bankruptcy Court for the Southern District of New York. Numerous civil complaints, as well as criminal indictments, were filed against Bennett, Grant and other Refco directors and officers alleging criminal acts, fraud and various other misdeeds by the respective defendants. Plaintiff's Complaint admits that he is a former officer of Refco who served as President of Refco Group until 1998 (Windels App. Dec. Ex. A, Complaint, ¶ 8). The Policy does not apply to acts committed by Grant after he ceased to be President of Refco Group.

**2.      Bennett, Trosten and Maggio Plead Guilty**

On February 15, 2008, Bennett pled guilty to each and every count of a twenty-count Indictment which had been filed in 2007 against him, plaintiff Grant and Robert Trosten, another former Refco officer (the "S-3 Indictment") (Windels App. Dec., Ex.

---

[1] A detailed description of the Refco fraud can be found in the 363 page Examiner's Report (Bank. S.D.N.Y. filed July 11, 2007) (05-60006, Doc. 5530). The Examiner's Report recounts the detailed factual basis for the allegations of fraud against Bennett, plaintiff and others.

G, Windels Aff., Ex. 2, pp. 4:6-20:24). Among other charges, Bennett pled guilty to: (1)

conspiracy to commit securities fraud, wire fraud, and bank fraud, and making material

misstatements to auditors and false filings with the SEC; (2) securities fraud; (3) false filing

with the SEC – Securities Exchange Act of 1934; (3) false filing with the SEC – Securities

Act of 1933; (4) wire fraud; (5) material misstatements to auditors; (6) bank fraud; and (7)

money laundering. Trosten also pled guilty to five counts of the Indictment against him on

February 20, 2008. The charges against Bennett, plaintiff Grant and Trosten covered the

period from the mid-1990s to 2005 (Windels App. Dec., Ex. G, Windels Aff., Ex. 1, pp. 3-

48).

      In a separate Criminal Information, Santo Maggio was accused of misconduct

similar to that of Bennett, Trosten and Grant. He pled guilty to four counts of the

Information on December 29, 2007.

    **3.**    **The Superseding Indictment and Conviction of Grant**

      Following the pleas of Bennett and Trosten, a superseding Indictment was

issued against Grant on February 26, 2008 (the "S-4 Indictment) (See Windels App. Dec.,

Ex. P). The allegations against Grant in the S-4 Indictment are basically the same as S-3.

Like the S-3 Indictment, the S-4 Indictment included charges of: (1) conspiracy to commit

securities fraud, wire fraud, and bank fraud, and making material misstatements to auditors

and false filings with the SEC; (2) securities fraud; (3) wire fraud; (4) bank fraud; and (5)

money laundering against Grant. No new counts were added against Grant and no existing

counts against him were dropped. Each of the counts in the S-4 Indictment stem from

plaintiff's conspiracy with Bennett and others, as described in Count I, and involved the

same time period. Further, each of the counts in the S-3 Indictment to which Bennett pled

guilty and which were also asserted against Grant, were asserted again against Grant in the S-4 Indictment (compare Counts 1 through 5 of S-4 with Counts 1, 2, 11, 15 and 19 of S-3 in that order).

The S-4 Indictment covered 37 pages and alleged, among other things, that:

6.      From at least as early as in or about the mid1990s, TONE N. GRANT, the defendant, and Phillip R. Bennett, together with others known and unknown, schemed to hide the true financial health of Refco from its banks, counterparties, auditors, and investors. Starting at least as early as the mid1990s, GRANT, Bennett and others embarked on a strategy to mask the true performance of Refco's business in order to sell the company for their own benefit and that of Refco's other owners. To that end, over the ensuing years, GRANT, Bennett and others known and unknown systematically (1) covered up both Refco's own losses and customer losses for which Refco became responsible; (2) moved Refco operating expenses off the company's books; and (3) padded Refco's revenues, all in an effort to mislead Refco's banks, counterparties, auditors and investors, with the goals of keeping Refco in business and then selling it for the maximum benefit to its owners and senior management.

7.      In furtherance of this scheme, Phillip R. Bennett, TONE N. GRANT, and others known and unknown, made and caused Refco and others on its behalf to make false and fraudulent statements to Refco's banks, counterparties, customers, auditors, and investors, and to create false audited financial statements and false public filings with the United States Securities and Exchange Commission ("SEC"). The scheme included obtaining, through fraud, the following: lines of credit for Refco; the private sale of notes prior to 2004; the sale of 57 percent of Refco to a group headed by Thomas H. Lee Partners in 2004; the sale of approximately $600 million of notes to the public in 2004; approximately $800 million of bank financing obtained in 2004; and the August 2005 initial public offering of stock ("IPO") in Refco Inc., in which the public purchased approximately $583 million of Refco common stock based on a false and fraudulent registration statement.

\* \* \*

54.    From in or about the mid-1990s up to in or about October 2005, in the Southern District of New York and elsewhere, TONE N. GRANT, the defendant, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with each other to commit offenses against the United States, namely: (a) to commit fraud in connection with the purchase and sale of securities issued by Refco, in violation of Sections 78j(b) and 78ff of Title 15, United States Code, and Section 240.10b-5 of Title 17, Code of Federal Regulations; (b) to commit wire fraud, in violation of Section 1343 of Title 18, United States Code; (c) to commit bank fraud, in violation of Section 1344 of Title 18, United States Code; and (d) to commit money laundering, in violation of Section 1957(a) of Title 18, United States Code.

(Windels App. Dec., Ex. P, pp. 3-4, 26).  The Indictment covers the period when Grant was

an officer of the Company up to 1998 as well as a substantial amount of time after that (1999

through 2005).  Unlike his co-conspirators, plaintiff did not plead and went to trial.  The

result was the same.  Plaintiff was convicted on all five counts of the S-4 Indictment

(Windels App. Dec. Ex. Q, pp. 3095:12 – 3097:8).

4.    **The Coverage Dispute with Illinois National and Other Carriers**

a.    **The Insurance Tower**

Separate from the Policy, which is a stand-alone policy with a different policy

period providing run-off coverage only for acts occurring prior to August 5, 2004, various

other insurers issued directors and officers liability insurance policies to Refco, Inc., for a

separate policy period, August 11, 2005 to August 11, 2006 (i.e., the "Tower").  The Tower's

primary layer, U.S. Specialty Insurance Company, issued a primary policy with limits of $10

million excess of applicable retentions (the "Primary Policy").  Lexington Insurance

Company issued a first excess policy with limits of $7.5 million excess of $10 million (the

7

"Lexington Policy"). Axis Reinsurance Company issued a second excess policy with limits

of $10 million excess of $17.5 million (the "Axis Policy"). Allied World Assurance

Company ("AWAC") issued a third excess policy with limits of $12.5 million excess of

$27.5 million (the "AWAC Policy"). Arch Insurance Company issued a fourth excess policy

with limits of $10 million excess of $40 million (the "Arch Policy"). XL Specialty Insurance

Company issued a fifth excess policy with limits of $20 million excess of $50 million (the

"XL Policy"). Plaintiff has also made claims for coverage under all of the above policies in

the Tower, and there is ongoing coverage litigation between plaintiff and all of the insurers in

the Tower, with the exception of U.S. Specialty and Lexington. All of the insurers in the

tower, with the exception of Arch and XL Specialty, have been paying defense costs for

Grant and others.

        **b.**       **The Illinois National Policy and its Coverage Position**

       The Policy was issued by Illinois National after it received an executed

Application ("the Application") signed by Bennett on behalf of all prospective insureds

(Windels App. Dec. Ex. H, FitzPatrick Aff., Ex. A). Illinois National's Application is

actually part of the Policy as established by the INSURING AGREEMENTS of the Policy

which are preceded by the following language: "[i]n consideration of the payment of the

premium, and in reliance upon the statements made to the Insurer by Application forming a

part hereof and its attachments and the material incorporated therein, the insurance company

designated in Item 8 of the Declarations, herein called the Insurer, agrees as follows: ...."

(Windels App. Dec., Ex. D, Schreiner Dec., Ex. A, p. 1). The inclusion of the Application as

part of the Policy is also confirmed in Section 19 of the Policy (Windels App. Dec., Ex. D,

Schreiner Dec., Ex. A, pp.16-17).

The Application provides in pertinent part the following:

9.    (a) **No Director or Officer has knowledge or information of any act, error or omission, which might give rise to a claim** under the proposed policy except as follows: (Attach complete details.  If they have no such knowledge of information, check here: "none" __ X __)

(b) Neither the Applicant nor any of its Subsidiaries has knowledge or information of any act, error or omission which might give rise to a securities claim under the proposed policy except as follows: (Attach complete details.  If they have no such knowledge or information, check here: "none" __ X __)

\* \* \*

(If any of the above is answered "Yes," attach full details.)

\* \* \*

**It is agreed that with respect to Questions 9… 10 above, if such knowledge, information or involvement exists, any claim or action arising therefrom is excluded from the proposed coverage**.  (emphasis added).

(Windels App. Dec. Ex. H, FitzPatrick Aff., Ex. A, p. 5).  Based on Bennett's guilty plea (and now confirmed by Grant's criminal conviction), there is no question that Bennett's answers to questions 9(a) and (b) were false and Bennett and Grant, as well as Trosten, Maggio and the applicant, Refco, had knowledge and information of circumstances – i.e., criminal acts – likely to lead to claims.  Consequently, all civil and criminal actions against Grant arising out of the acts, errors or omissions known by Bennett, Grant, Trosten, Maggio or Refco that could give rise to a claim are excluded from coverage by reason of the agreement in the quotation above, which is part of the Policy.  Bennett pled guilty to each and every count in the S-3 Indictment, which detailed allegations of fraudulent conduct covering the period of 1997 to 2005 (Windels App. Dec., Ex. G, Windels Aff., Ex. 2, pp.

9

4:11-20:23).  Bennett specifically confirmed, among other things, that "on or about the dates

set forth in the [S-3] indictment" he made the "various wire transfers and wire

communications, as well as certain filings [alleged] in the indictment." (Windels App. Dec.,

Ex. G, Windels Aff., Ex. 2, pp. 19:22-20:3).  The S-3 Indictment details in paragraphs 3

through 85 the schemes involving Bennett, Grant, Trosten and others during the period of

1997 to 2005 as well as the various wire transfers, wire communications and filings testified

to by Bennett at his plea hearing (Windels App. Dec., Ex. G, Windels Aff., Ex. 1, ¶¶ 3-85).

        Based on plaintiff's recent conviction, Illinois National's position of no

coverage is also bolstered by additional coverage defenses, including the criminal, fraudulent

and dishonest acts exclusion of the Policy.[2]  Clause 4(c) provides that there is no coverage

for Claims against the Insured, "arising out of, based upon, or attributable to the committing

in fact of any criminal, fraudulent or dishonest act or any willful violation of any statute, rule

or law..." (See Windels App. Dec. Ex. D, Schreiner, Dec., Ex. A, p. 6).  Plaintiff was

convicted on all counts in the S-4 Indictment; that is, he has been found to have committed

all of the criminal and fraudulent acts alleged.  Illinois National acknowledges that this

defense was not available to it at the time the preliminary injunction motion was argued on

March 20th or when the Notice of Appeal was filed on April 4th, but submits that the defense

is a proper subject for this appeal, especially in light of the expansion of the record and the

need for Grant to establish coverage in order to obtain advancement of defense costs.

        As to the obligation of Illinois National to advance defense costs, the Policy

provides " . . . the Insurer shall advance . . . Defense Costs prior to the final disposition of a

---

[2] In its Memorandum of Law opposing plaintiff's motion below, Illinois National reserved its rights to raise
additional coverage defenses at the appropriate time (Windels App. Dec., Ex. I, pp. 3-4).

claim." However, the same clause goes on to provide: "Such advanced payments by the Insurer shall be repaid to the Insurer by the Insureds ...in the event and to the extent that the Insureds . . . shall not be entitled under the terms and conditions of this policy to payment of such Loss." (Windels App. Dec. Ex. D, Schreiner Dec., Ex. A, p. 12).[3]

Moreover, the Insuring Agreement of the Policy provides coverage for individual insureds as follows:

### 1. INSURING AGREEMENTS

### COVERAGE A:  INDIVIDUAL INSURED INSURANCE

This policy shall pay the Loss of each and every director, Officer or Employee of the Company arising from a Claim first made against such Insureds during the Policy Period or the Discovery Period (if applicable) and reported to the Insurer pursuant to the terms of this policy for any actual or alleged Wrongful Act in their respective capacities as Directors, Officers or Employees of the Company except when and to the extent that the Company has indemnified such Insureds.  The Insurer shall, in accordance with and subject to Clause 8, advance Defense Costs of such Claim prior to its final disposition.

It is conceded by Grant that he left the company no later than 1998 (Windels App. Dec., Ex. A, Complaint, ¶ 8).  Consequently, the Policy under no circumstances provides coverage to Grant for Loss in the criminal and civil actions after the time he ceased being an officer in 1998.  Further limiting coverage under the Policy is Endorsement No. 14 which effectively restricts coverage to acts on or prior to the Effective Time of the Endorsement (August 5, 2004) (Windels App. Dec., Ex. D, Schreiner Aff., Ex. A, End. 14).

---

[3] Illinois National intends to seek reimbursement of the defense costs it has paid to Grant, as he is not entitled to such based on his conviction and for other reasons.

11

c.    **This Lawsuit and the Court's Prior Ruling**

The Complaint in this Adversary Proceeding seeks, among other things, declaratory relief that plaintiff is entitled to the advancement of defense costs under the Policy for the criminal action arising from the S-3 Indictment ("the Criminal Action") and certain civil actions filed against him (Windels App. Dec. Ex. A, Complaint ¶¶ 12-13). The second cause of action seeks preliminary and permanent injunctive relief requiring Illinois National to advance defense costs in those actions. The Complaint also seeks compensatory damages. Simultaneous with the filing of the Complaint in the Adversary Proceeding, plaintiff filed a motion for a preliminary injunction for the advancement of defense costs for the Criminal Action and the civil actions (Windels App. Dec. Ex. A, Complaint ¶¶ 12-13). Illinois National opposed the motion citing, among other things, the exclusion from coverage found in the Application (i.e., all actions "arising" from facts known to any Director of Officer or the Applicant at the time of the Application, but which are not disclosed). Illinois National, aware that not all of its coverage defenses might be ripe for determination, reserved all rights to supplement its coverage position and raise additional defenses.

A hearing on the motion was held on March 20, 2008 where the Court acknowledged the significance to Illinois National's coverage of Bennett's guilty plea, a fact Grant failed to disclose in his motion papers (Windels App. Dec. Ex. M, pp. 14:11 – 15:25). Illinois National presented the argument that the guilty plea to each and every count in the S-3 Indictment by Bennett, who signed the Application, conclusively established that he was aware of facts and circumstances that could give rise to claims; thus, all actions arising therefrom, including the criminal and civil actions against plaintiff, were excluded from coverage (Id., pp. 19:16 – 36:3). The Court analyzed the argument but concluded that it

12

could not be established that all claims against Grant (in the S-3 Indictment) necessarily arose out of the crimes for which Bennett pled guilty because Bennett's plea did not specifically state he committed the crimes with plaintiff (Id., pp. 45:14 – 47:4).[4]  The Bankruptcy Court was made aware of the S-4 Indictment at oral argument, although the document was not in the record before the Court (Id., p. 11-12).

Without the benefit of ever having seen the S-4 Indictment against Grant (upon which the impending criminal trial was to be based), the Court granted the preliminary injunction and issued its Order dated March 25, 2008 (and an Errata Order of March 26, 2008) that directed Illinois National to advance defense costs in accordance with the terms of the Policy (Windels App. Dec., Ex. K, ¶3).

## C.    The Basis for Reversal of the Order

The Bankruptcy Court erred because it granted plaintiff's motion for preliminary injunction despite the dispositive nature of the Bennett plea and the S-3 Indictment as to Bennett's and Refco's misrepresentations on the Application and the Court's failure to recognize that the Application excludes from coverage "any claim or action arising therefrom [the knowledge or information omitted or misrepresented]." (Windels App. Dec. Ex. H, FitzPatrick Aff. Ex. A - Application, p. 3).  In addition, the Bankruptcy Court erred by not holding plaintiff to his burden that he establish coverage by forcing him to place before

---

[4] The argument was focused entirely on coverage for the Criminal Action, although the relief sought also included advancement of defense costs for certain civil litigations.  Plaintiff did not even submit in his motion copies of any of the complaints in the civil actions, or the criminal Indictments, for which he sought coverage.  Nor did he include them as exhibits to his Complaint.  Illinois National included the S-3 Indictment with its opposition papers (Windels App. Dec., Ex. G, Windels Aff., Ex. 1).

13

the Court the S-4 Indictment in order to establish coverage for the Criminal Action and the civil complaints in order to establish coverage for the civil actions.[5]

Notwithstanding the rationale stated by Judge Drain in his decision, plaintiff's recent criminal conviction satisfied the concerns expressed from the bench which led the Court to rule in Grant's favor. Specifically, the Court, during argument of the motion, considered the relevance of particular findings as to Grant's guilt, "if [Bennett] had said [at his plea allocution], I did all this with Grant, then I think, you know, subject to all the other points I raised earlier about whether a guilty plea could be considered as extrinsic evidence, I think [Illinois National] win[s]." (Windels App. Dec. Ex. M, p. 32). Grant's criminal conviction conclusively establishes his knowledge. The S-4 Indictment against plaintiff, essentially repeats the same Counts filed against him in S-3, which asserted Grant and Bennett acted in concert for a decade, all of which were counts as to which Bennett pled guilty. The crimes charged against Grant in S-4, and on which he was convicted, were all included in the Bennett Indictment, S-3, and were all part of Bennett's guilty plea.

The Bankruptcy Court's Order should be reversed. The criminal conviction of plaintiff establishes Grant's complicity with Bennett and others beyond question. Illinois National previously argued that Bennett, in fraudulently completing the Application and answering questions 9 (a) and 9 (b) in the negative, precluded coverage not only for himself but for Grant as well. Grant's conviction coupled with Bennett's plea conclusively

---

[5] As the record on the motion, particularly at oral argument, clearly shows, the necessity in plaintiff's view for the preliminary injunction was the imminent commencement of Grant's criminal trial on the S-4 Indictment (Windels App. Dec., Ex. M, pp. 3:15 – 3:22). The civil actions were hardly considered.

establishes that he acted in concert with Bennett and others in connection with the charges in the S-4 Indictment.

Moreover, even prior to Grant's own conviction, the Bennett plea demonstrated that all the crimes to which he pled guilty represented facts not disclosed in the Application, which were the same facts forming the basis for plaintiff's superseding Indictment (S-4), and the civil actions. Therefore, the exclusionary language found in the Application and incorporated into the Policy, as well as the Policy's fraud and criminal acts exclusion, applies. Plaintiff's conviction now establishes he himself was aware of facts that would lead to, and which now have led to, claims being brought against him (plaintiff's conviction covers a period several years prior to the application date of January 7, 2004 – see Windels App. Dec. Ex. P and Ex. Q, pp. 3095:12 – 3097:8 and all civil litigations arise out of the same events). There is simply no distinction to be drawn between Bennett and Grant's knowledge for the period relevant to Grant.

In addition, the criteria on which the Court relied in granting plaintiff's application for extraordinary relief no longer apply. There is no longer the urgency of plaintiff facing a criminal trial. Since the hearing, Illinois National has paid its allocable share of plaintiff's defense costs in accordance with the terms of the Policy, and another insurer, AWAC, has been ordered to pay its share based on a preliminary injunction issued on April 21, 2008 (see ECF No. 22, in Adversary Proceeding 08-01133, U.S. Bankruptcy Court, S.D.N.Y.). Furthermore, Grant's defense costs had been paid by the insurers in the tower all along. Finally, based on the plaintiff's criminal conviction there cannot be a likelihood of success on the merits of the coverage action by Grant, and Grant is required by the terms of Illinois National's Policy to repay the amounts advanced.

15

## ARGUMENT

## POINT I

### THE COURT BELOW ERRED IN GRANTING THE PRELIMINARY INJUNCTION BECAUSE GRANT DID NOT ESTABLISH COVERAGE, AND THERE IS NO DUTY BY ILLINOIS NATIONAL TO ADVANCE DEFENSE COSTS

There is no coverage for Grant in the Criminal Action or the civil actions under the Policy. The established fact is that Bennett, Refco's president, made numerous material misrepresentations in the Application for the Policy and the criminal and civil claims against plaintiff arose out of the knowledge and information misrepresented. The complicity between Bennett and Grant is irrefutable based on Bennett's plea, which has now been reinforced by plaintiff's conviction. Indeed, Bennett and Refco withheld from Illinois National the very fact that Bennett and others at the company, including Grant, had committed criminal acts that would most assuredly lead to claims. Put simply, it is irrefutable, that when Bennett completed the Application he, Grant and Refco had "knowledge, information [and] involvement" as to criminal acts, which involved the participation of plaintiff with Bennett, and as a result, "any claim[s] or action[s] arising therefrom [are] excluded from the … coverage." Unequivocally, this established fact excludes coverage for the criminal and civil actions against Grant under both the Application and the fraud and criminal acts exclusion because such actions arose out of Bennett's, and Grant's own, criminal activities.

### A.  Coverage is Excluded Under the Application

The Bankruptcy Court's decision misconstrued the "arising out of" language in the Application. Specifically, Judge Drain held that "I believe that construction of the

phrase, 'arising under,' in the application raises the same issues or the same types of issues as construction of the phrase 'as contributed to or brought about' analyzed by the district court in the Great American v. Gross decision," [citing Great American Ins. v. Gross, 2005 WL 1048752 (E.D. Va.) *5]. However, Gross does not even discuss the words "arising out of." Also, such a reading is inconsistent with the plain and unambiguous language of the Illinois National Application and disregards New York and Delaware law concerning rules of contract construction which supports Illinois National's argument that "arising out of" Application language is indeed broad, and should be applied as written. The Gross case gives no indication as to which state's rules of contract construction applied and cited no cases as to the basis for the Court's interpretation. Presumably, the court in Gross relied on Virginia law.

However, under either New York or Delaware law, the Policy's "arising out of" language should be read and applied broadly since both have similar principles of contract construction. See New Castle County v. Hartford Accident & Indemnity Co., 970 F.2d 1267, 1270 (3rd Cir. 1992) ("When the language of an insurance policy is clear and unambiguous, Delaware applies ordinary principles of contract law. The parties are bound by the plain meaning of the policy, because manufacturing an ambiguity creates a new contract with rights, liabilities and duties to which the parties did not assent"). The Court in New Castle County, noted that New York's law on the interpretation of exclusionary clauses is "similar to Delaware's in that the language of an insurance policy is enforced according to its plain meaning." Id. at 1273. Moreover, the exclusionary language from the Gross case cited to by Judge Drain does not even appear in the Application or Illinois National's own criminal, fraudulent and dishonest acts exclusion. The Court in Gross made no attempt to

equate the language "brought about or contributed to" to any other policy form, and the language is not as broad as the "arising out of" language in the Application and the Policy. In any event, even under the higher standard applied by Judge Drain, the Criminal Action and the civil actions would still be excluded.

The terms and conditions of an insurance contract are afforded their plain and ordinary meaning and enforced as written, absent ambiguity. Metropolitan Life v. RJR Nabisco, 906 F.2d 884, 889 (2nd Cir. 1990). The words "arising out" as contained in the Application's exclusion are clear and unambiguous and "have broader significance than the words caused by, and are ordinarily understood to mean originating from, incident to, or having connection with...." United States Fire Ins. Co. v. New York Marine and General Ins. Co., 268 A.D.2d 19, 21-22, 706 N.Y.S.2d 377, 378-79 (1st Dep't 2000) (so holding with respect to meaning of "arising out of the use of" in automobile exclusion); Purdue Frederick Co. v. Steadfast Ins. Co., 2005 WL 1662028 at *5 (Sup. Ct., N.Y. Co. 2005) ("New York's interpretation of 'arising out of' in general liability insurance contracts is indeed broad."), quoting, Aetna Cas. & Surety Co. v. Liberty Mut. Ins. Co., 91 A.D.2d 317, 320-21 (4th Dep't 1983); McGinniss v. Employers Reinsur. Corp., 648 F. Supp. 1263, 1267 (S.D.N.Y. 1986) (holding that coverage for injury "arising out of" specified torts covered injury "originating from" or "having connection with" any of the specified torts).

More recently, the Court of Appeals reaffirmed that the phrase "arising out of" in the context of an exclusion "requires only that there be some causal relationship between the injury and the risk for which coverage is provided." Maroney v. New York Central Fire Ins. Co., 5 N.Y.3d 467, 472, 805 N.Y.S.2d 533, 536 (2005) (emphasis added) (holding that exclusion of injury "arising out of" use of premises barred coverage for injuries caused by a

18

horse's kick on premises since the injury was related to the purposes for which the premises were used, i.e., boarding horses).  See also E.I. DuPont DeNemours & Co. v. Admiral Ins. Co., 711 A.3d 45, 65-66 (Sup. Ct. of Del. 1995) ("[t]he phrase 'arising out of' has only one reasonable meaning in the context of the pollution exclusion – originating from, growing out of or flowing from (citations omitted)." ..."In order to qualify as a 'discharge' under the pollution exclusion, there must only be some causal relationship between the discharge and the damage.").  Thus, there can be no question that the S-4 Indictment "arises out of" the same crimes to which Bennett pled guilty and the facts withheld from Illinois National in the Application.

The Court below reasoned that Bennett's plea and his admissions to crimes in the S-3 Indictment would have to match the factual allegations against Grant in S-3 and S-4. In fact, they do, with both asserting in detail the longstanding conspiracy between Bennett, Grant and other Refco executives.  The contents of: (1) the S-3 Indictment, (2) Bennett's plea transcript, and (3) the S-4 Indictment, now supported even further by Grant's criminal conviction, conclusively establish Bennett's misrepresentations on the Application and that the claims against him and plaintiff "arose" out of those misrepresentations.  Indeed, the evidence is irrefutable that Grant and Bennett engaged in a criminal conspiracy and multiple other criminal acts.  Bennett and Refco failed to disclose this in responding to the questions 9(a) and (b), and the criminal and civil actions against Grant arose out of the "knowledge and information" misrepresented to Illinois National.

The Court also suggested that the Indictment contained numerous "claims," and that Illinois National had to establish that each such "claim" arose out of the information revealed by Bennett's guilty plea.  In fact, under the plain meaning of the exclusionary

19

language in the Application, "any claim or action" arising out of that information is excluded

from coverage, and it is indisputable that the Criminal Action, and each of the civil actions,

are "actions" that arise out of the information revealed in Bennett's guilty plea as well as

Grant's criminal conviction.  Such an exclusion in the application to a directors and officers

liability policy has been applied to preclude coverage for an entire lawsuit.  2575 Owners

Corp. v. Federal Ins. Co., 1998 WL 846123, *2 (S.D.N.Y. 1998).  In this case, the Court

excluded coverage for a later lawsuit – rather than just certain "claims" within that lawsuit --

based on a clause that excluded coverage for "any claim or action" arising from facts not

disclosed in the application.  The Court observed:

> Here, we are not faced with an ambiguous provision.  The
> application, in simple and straightforward terms, required
> plaintiffs (who were not unsophisticated) to disclose any facts
> that gave them reason to believe a future claim might be made
> within the coverage of a standard "D&O" policy protecting
> against litigation risk.  Such disclosure of relevant material
> information is the *sinequanon* of any insurance application, for
> otherwise the insurer has no way of gauging the risk he is being
> asked to insure.

See also Greenwich Insurance v. Lecstar, 2006 WL 2052375, *3 (N.D. Ga. 2006) (applying

insured vs. insured exclusion as bar to entire lawsuit, not just particular claims therein).

**B.    The Criminal, Fraudulent and Dishonest Acts**
       **Exclusion is Applicable**

An additional basis for reversal of the preliminary injunction Order, as well as

the determination of the entire coverage action in Illinois National's favor, namely, the

Policy's criminal, fraudulent and dishonest acts exclusion, which has now ripened as a

defense to coverage as a result of plaintiff's criminal conviction.  Clause 4(c) of the Policy

reads, in pertinent part:

20

### 4. EXCLUSIONS

The Insurer shall not be liable to make any payment for Loss in connection with a Claim made against an Insured:

\* \* \*

(c) arising out of, based upon or attributable to the committing in fact of any criminal, fraudulent or dishonest act, or any willful violation of any statute, rule or law;

[The Wrongful Act of an Insured shall not be imputed to any other Insured for the purpose of determining the applicability of the foregoing exclusions 4(a) through 4(c).]

There can be no doubt that the actions for which Grant seeks coverage, including both the S-4 Indictment and the civil actions, are all "arising out of, based upon or attributable to [plaintiff's]... committing in fact of any criminal, fraudulent or dishonest act[s] or... [a] willful violation of... [a] statute rule or law..." Once again, since Grant was convicted on all counts in the S-4 Indictment, there is no doubt that, at the very least, he has been found "in fact" to have committed all of the criminal and fraudulent acts alleged. The coverage outcome for the civil actions is no different, since all of the Complaints reference the criminal conspiracy outlined in the S-4 Indictment, and the causes of action against Grant arise out of, are based on or are attributable to them (in addition, the vast majority of the allegations and claims in the civil actions concern time periods for which Grant has no coverage at all, i.e. post 1998. See p. 11, supra). The use of "in fact" language in policy exclusions has been applied by the courts to exclude coverage. Steadfast Ins. Co. v. Stroock & Stroock & Lavan, LLP, 277 F.Supp.2d 245, 252-253 (S.D.N.Y. 2003), National Union Fire Insurance Co. of Pittsburgh, Pa. v. Continental Illinois Corp., 666 F.Supp. 1180, 1197-1200 (N.D. Ill. 1987), American Casualty Co. v. United Southern Bank, 950 F.2d 250, 254

(5th Cir. 1992).  Since all of plaintiff's claims for coverage are disposed of by this exclusion,

the Court should not only vacate the preliminary injunction Order on this basis as well, but

dismiss plaintiff's Complaint in its entirety and permit Illinois National to pursue recoupment

for the defense expenses it has paid pursuant to the terms of the Policy.

**C.    The Court's Consideration of Extrinsic**
       **Evidence if Proper**

          At oral argument of the motion, the Court questioned whether the Bennett plea

was extrinsic evidence that could be considered at all in that context.  That Court, and this

Court, may consider this extrinsic evidence as well as the S-4 Indictment and Grant's

criminal conviction.  In <u>IBM v. Liberty Mutual</u>, 363 F.3d 137, 148 (2nd Cir., 2004) the court

held that "[a] narrow, but widely recognized exception to the rule allows an insurer to refuse

or withdraw a defense if evidence extrinsic to those sources [the underlying complaint and

the policy]  and 'unrelated to the merits of [the underlying] plaintiff's action[s][against the

insured][,] plainly take the case outside of policy coverage.'" (citations omitted)); <u>Northville</u>

<u>Indus. v. Nat'l Ins.</u>, 89 N.Y.2d 621, 635 (1997) (holding that in order to determine if the

claim is potentially covered "court may look to judicial admissions in the insured's

responsive pleadings in the underlying tort action or other formal submissions in the current

or underlying litigation to confirm or clarify the nature of the underlying claims.").

          The rationale for allowing this type of evidence in this case was set forth in

<u>Avondale Industries v. Travelers Indemnity Co.</u>, 774 F.Supp. 1416, 1424 (S.D.N.Y. 1991).

The Court there held:

> "[t]he insurer's duty to defend is… not an interminable one, and
> will end if and when it is shown unequivocally that the damages
> alleged would not be covered by the policy."  <u>Sturges</u>
> <u>Manufacturing Co. v. Utica Mutual Ins. Co.</u>, 37 N.Y.2d 69, 74,

22

> 371 N.Y.S.2d 444, 449, 332 N.E.2d 319, 322 (1975). Thus, where a court can determine conclusively that there is no genuine dispute as to an extrinsic fact which when applied to the underlying allegations limits them to a claim not covered by the policy, the insurer no longer need defend. In making such a determination, the court may thus, in exceptional circumstances, look outside the four corners of the complaint to consider whether extrinsic evidence establishes to a certainty that the insurer faces no liability for indemnity.

See also, Fuchsberg & Fuchsberg v. Chicago Ins. Co., 2001 WL 414013 *10 (S.D.N.Y. 2001) (citing Avondale).

**D.     The Absence of Coverage Precludes the Advancement of Defense Costs**

Keeping in mind the Policy has a duty to advance and not to defend, when there is no coverage, there is no obligation to advance defense costs. Vigilant Insurance v. Credit Suisse, 10 A.D. 3rd 528, 529 (1st Dep't 2004) " (...defense costs are only recoverable for covered claims."). As the Second Circuit held in Stonewall Insurance v. Asbestos Claims Management, 73 F. 3rd 1178, 1219 (2nd Circuit 1995), a decision cited in and relied upon by the Court in Vigilant:

> ...under policies containing a duty to reimburse defense cost but not a duty to defend, the insurers have a duty to reimburse defense costs for claims that are established to be covered through judgment and settlement, and not for claims only potentially falling within the policies coverage suit. The policies do not contemplate unconditional payment of defense costs for potentially covered claims, but only payment of costs if indemnification is required.

Even in speaking of the broader duty to defend (not part of the Policy), and not the duty to advance defense costs, the standard is that the claim for which the insured seeks to have his defense costs reimbursed must be covered under the terms of the policy. See National Union v. State Insurance Fund, 18 A.D.3d 202, 203 (1st Dept. 2005); Federal

23

Insurance v. Tyco, 2004 WL 583829, *6 (N.Y. Supreme Court, New York County 2004)

("The duty [to pay defense costs] exist whenever a complaint against the insured alleges,

claims that may be covered under the insurer's policy [citation omitted]... conversely, the

insure has no duty if, as a matter of law, the allegations in the complaint could not give rise

to any obligation to indemnify, or the allegations fall within a policy exclusion"[citation

omitted]); Steadfast Insurance v. Stroock & Stroock & Lavan, 277 F.Supp.2d 245, 251

(S.D.N.Y. 2003).

      The reasoning of the Court in Tyco was relied upon in In Re WorldCom, 354

F.Supp.2d 455, 464 (S.D.N.Y. 2005). In discussing the duty to pay defense costs, Judge Cote

held such duty, "'exists whenever a complaint against the insured alleges claims that may be

covered under the insurer's policy.'"(quoting Tyco, 2004 WL 583829 at *6).  There is no

doubt, however, that it is the insured's burden to establish coverage in the first place.  See,

Metro Heat & Power v. AIG Claims, 47 A.D.3d 621, 622 (2d Dep't 2008) ("Generally, it is

for the insured to establish coverage and for the insurer to prove that an exclusion in the

policy applies to defeat coverage." quoting Consolidated Edison v. Allstate, 98 NY2d 208,

218 (2002)).

      Below, Grant failed in his obligation to show that he was entitled to coverage

under the Policy.  He sought coverage for a criminal case about to go to trial, yet failed to

submit to the Court the operative Indictment or any of the civil complaints with his

complaint (Windels App. Dec. Exs. A and M, pp. 11:16 – 11:22).  He also failed to submit

the complaints for the civil actions for which he sought for advancement.[6]  For that reason

_____

[6] Had plaintiff submitted the civil complaints, it would have been clear that there is no coverage under the Policy for those claims in any event.  For example, one of the principal civil actions for which plaintiff seeks advancement is a

alone, the Court below should have denied his application. In fact, because of the

indictments, guilty pleas and criminal conviction, Grant could not have established coverage.

## POINT II

### THE COURT BELOW ERRED IN GRANTING EXTRAORDINARY RELIEF AS THE REQUIREMENTS NECESSARY FOR A PRELIMINARY INJUNCTION AGAINST ILLINOIS NATIONAL WERE NOT MET

**A.    This Extraordinary Relief Should Not Have Been Granted**

A preliminary injunction is an extraordinary and drastic remedy which is not

routinely granted by the courts. Medical Soc. of N.Y. v. Toia, 560 F.2d 535, 538 (2d Cir.

1977). A party seeking such relief must establish irreparable injury and either a likelihood of

success on the merits, or at least sufficiently serious questions going to the merits to make

them a fair ground for litigation, as well as a balance of hardships tilting decidedly towards

the movant. Javaraj v. Scappini, 66 F.3d 36, 38-39 (2d Cir. 1995). The guilty plea by

Bennett, now reinforced by the criminal conviction of Grant, precludes coverage for Grant as

a matter of law under the express terms of the Policy. Grant did not, and cannot, establish a

likelihood that he would succeed on the merits of his coverage action against Illinois

National, nor did he establish sufficiently serious questions and a balancing of the hardships

in his favor.

---

securities fraud class action arising out of the 2005 Refco IPO. Clause 4(j) of the Policy — which was issued more than a year before the IPO -- provides that Illinois National shall not be liable to make any payment for loss in connection with a claim arising out of a public offering of securities. Also, the vast majority of the claims in the Complaints assert allegations that post-date Grant's service as an officer, which ended no later than 1998 (Complaint, ¶ 8).

Judge Cote in <u>WorldCom</u> acknowledged the standard that the insured, in connection with the preliminary injunction motion, "must show… that, under the terms of the policies, he is entitled to payment of defense costs as they are incurred…" <u>Id</u>. at 466, 467.  Moreover, on the necessary showing of "irreparable harm" Judge Cote recognized the requirement that movant demonstrate "evidence of damage that cannot be rectified by a financial compensation." (355 F.Supp.2d at 469) (quoting <u>Tucker Anthony Realty Corp. v. Schlesinger</u>, 888 F.2d 969, 975 (2nd Cir. 1989)).  The <u>WorldCom</u> Court then went on to discuss its finding of "irreparable injury" on the basis that a class action trial was about to begin, highlighting the damages other than monetary that might occur from an adverse judgment at trial, including "damage to reputation, the stress of litigation and the risk of financial ruin…" <u>Id</u>. at 469.

These criteria were not present below and certainly are no longer applicable in this case.  As demonstrated herein, plaintiff was not entitled to coverage.  Also, there was no potential damage to plaintiff that could not be rectified by financial compensation.[7]  Plaintiff had already been paid defense costs from the other carriers in the Tower (who did not have the benefit of the Bennett plea before they paid), and there was no evidentiary showing whatsoever by him in his motion papers or at the hearing that he did not have the means to pay his own lawyers.  There was no likelihood that defense counsel would withdraw on the eve of trial.

---

[7] As the Court noted at oral argument, it was unlikely counsel would be permitted to withdraw from the representation (Windels App. Dec., Ex. M, pp. 15:8 – 15:15).

Plaintiff's arguments of stress of litigation, and concerns about losing the criminal trial and injury to reputation are gone, as that has now occurred (while his defense was being funded).

The Bankruptcy Court cited, in its ruling, the 2005 decision in <u>Great American Insurance v. Gross</u>, 2005 WL 1048752 (E.D. Virginia 2005). This case highlights the standard that "preliminary injunctions represent an extraordinary remedy and should 'be granted only sparingly and in limited circumstances.'" <u>Great American</u> at *2 (quoting <u>Micro Strategy, Inc. v. Motorola, Inc.</u>, 245 F.3d 335, 339 (1st Cir. 2001)). The Court also emphasized the need for the movant to "clearly establish its entitlement to the relief sought." <u>Ibid</u>.

The <u>Great American</u> Court found irreparable harm in that a failure to advance defense costs would cause defendant's counsel to withdraw. In that context, the Court found that movant is not required to make a strong showing "when the balance of harm tips decidedly in favor of the moving party and the case raises grave or serious questions," <u>Id</u>. at *5, and the insured there had "demonstrated that the balance of the hardship tilts decidedly in their favor because they face serious, imminent and irreparable harm as a result of plaintiff withholding the costs of defense." <u>Ibid</u>.

Thus, the considerations in <u>Great American</u> that contributed to a decision allowing a preliminary injunction are not, or at least are no longer, in play in this case. Plaintiff has been found guilty. He is not susceptible to serious or irreparable harm if Illinois National is not ordered to pay (other insurers are paying some of his defense costs, and his counsel will not be permitted, nor has his counsel threatened, to withdraw), the likelihood of success is on the part of Illinois National, and the insurer bears the brunt of the balance of the

27

harm (i.e., those defense costs it pays on plaintiff's behalf are not likely to be recouped). In addition, it is necessary to emphasize that plaintiff, in any event, is entitled to coverage for only those claims relating to his role as officer or director of Refco, which roles ended toward the end of 1998 (Windels App. Dec. Ex. A, ¶ 8). Plaintiff's conviction, and the civil litigation, concern, for the most part, events taking place after 1998. Thus, if plaintiff is ultimately entitled to coverage for any defense costs, it would only be a very small portion.

Finally, in balancing the equities the Court must weigh the benefits of continuing Illinois National's obligation to pay defense costs against the very strong likelihood that once funds are paid out, Illinois National will not be able to recover them later. Plaintiff is about to be sentenced. The S-4 Indictment does have a provision for forfeiture of assets (Windels App. Dec. Ex. P, pp. 35-37). It is expected that plaintiff's assets will, for the most part, be encumbered by the government.

In addition, the cases relied upon by the Bankruptcy Court are factually distinguishable. In re WorldCom, Inc., Sec. Litig., 354 F. Supp. 2d at 463, 465 (S.D.N.Y. 2005) and prior cases upon which that court previously relied (see Windels App. Dec., Ex. M, pp. 39:13 – 40:21) were primarily rescission cases in which the respective insurers maintained that they were misled into issuing their policy and sought a judicial determination that the policy was void, *ab initio*, as a result of the misrepresentation. See, In re WorldCom, 354 F. Supp. 2d at 465-766; Federal Ins. Co. v. Kozlowski, 18 A.D.3d 33, 39-41, 792 N.Y.S.2d 397, 401-02 (1st Dept. 2005). When the insureds sought advancement of defense costs, none of the insurers had met their burden of proving the grounds for rescission. Id. See also Kozowski, 792 N.Y.S.2d at 404 (noting that an insurer does not have a duty to pay

28

defense costs where an insured's claims are excluded from coverage pursuant to the language of the policy).

A further (post-criminal trial) ruling in the <u>Tyco</u> case (<u>Federal Ins. Co. v. Tyco International</u>, Index No. 600507/03 Supreme Court of the State of New York, County of New York, August 10, 2006) is on point. Justice Freedman ruled on August 10, 2006, with regard to defendant Kozlowski's post-criminal trial motion to direct Federal to pay some $17.8 million of his defense fees in his criminal and related civil actions (see Ex. A hereto). The motion followed Kozlowski's conviction on 30 of 31 charges submitted to the jury (a few charges were also dropped). <u>Id.</u>, p. 2.

Justice Freedman cited her prior ruling that "[i]f any portion of a complaint [against an insured] might result in coverage, the insurer must defend or pay defense expenses for all claims, both covered and non-covered." <u>Id.</u>, p. 3. The Court then concluded, "**[i]f Kozlowski had any pre-conviction rights** to be reimbursed for expenses as he incurred them, he never exercised it because he never sent Federal any invoices for his defense costs." <u>Id.</u>, p. 5. (emphasis added). More importantly, in granting Federal's cross-motion for a declaration that the policies did not cover any of Kozlowski's (and Schwartz, another insured) defense costs in the criminal action, the Court held, "virtually all of Kozlowski's and Schwartz's defense expenses are now excluded from coverage by the Fraudulent Acts or Personal Profit Exclusion, and Kozlowski and Schwartz make no showing that any of their defense expenses can be allocated to covered losses." <u>Ibid</u>.

**B.    Plaintiff Cannot Establish A Likelihood of
Success on the Merits**

An insurer has no duty to advance defense costs where it is clear from the

policy at issue that an insured's claim would not be covered.  See Cement and Concrete

Workers Dist. Council Pension Fund v. Ullico Cas. Co., 387 F.Supp. 2d 175, 190-91

(E.D.N.Y. 2005) (insurer not obligated to advance defense costs where it is clear that an

insured's claims are not covered under the policy); Villa Charlotte Bronte, Inc. v.

Commercial Union Ins. Co., 64 N.Y.2d 846, 848, 476 N.E.2d 640 (1985) (to the same

effect).  The criminal plea by Bennett and the conviction of Grant establish that none of the

claims against plaintiff are covered under the Policy.  Based on the false responses given to

questions 9(a) and (b) in the Application, which effectively acts as a prior knowledge and

acts exclusion, the Court should find that Illinois National has no obligation to advance

defense costs.  But even under the analysis applied by the Bankruptcy Court, there is no basis

to find coverage.

It is well established that D&O insurers like Illinois National include prior

knowledge exclusions in policies in order to properly evaluate and assess the risks involved

in providing coverage to prospective insureds.  See 2575 Owners Corp. v. Federal Ins. Co.,

1998 WL 846123, at *2 (S.D.N.Y. Dec. 3, 1998) (noting that an insured's disclosure of

information relating to its knowledge of the potential for future claims is an indispensable

condition to any D&O policy); cf. Barry R. Ostrager and Thomas R. Newman, Handbook on

Insurance Coverage Disputes, § 20.02 (14th ed. 2008) ("Directors and Officers liability

insurers invariably require the insured provide certain information for use by the insurer in

evaluating the risks of providing coverage…[, including] all facts known to any of the

30

directors or officers that 'might give rise to a claim' under the policy or, in the alternative, an affirmation that the directors and officers are unaware of any such facts.")

The language of the prior knowledge exclusion in the Application is unequivocal and has been enforced by other courts. "…[W]ith respect to Questions 9 and 10 above [in the Application], if such knowledge, information or involvement exists, any claim or action arising therefrom is excluded from the proposed coverage." (Windels App. Dec., Ex. H, FitzPatrick Aff., Ex. A, Application, p. 3). Any action arising out of misrepresented or omitted facts is excluded, thereby relieving Illinois National of any obligation to advance defense costs as a matter of law. See, e.g., Coregis Ins. Co. v. Lewis Johns, 2006 WL 2135782, at **4, 10-12 (E.D.N.Y. 2006) (enforcing policy language that excluded claims if "any insured" knew or could have reasonably known of circumstances prior to the inception of the policy that might give rise to a claim); McCauley Enterprises, Inc. v. New Hampshire Ins. Co. 716 F. Supp. 718, 721 (D.Conn. 1989) (where policy excluded coverage for loss of personal property occurring as a result of any fraudulent, dishonest, or criminal act by "any insured," innocent insured cannot recover). See also 2575 Owners Corp., 1998 WL 846123, at *2 (excluding coverage for insureds' claims under a D&O policy where policy language required "any individual" covered under the policy to disclose facts that gave the insurer a reason to believe a future claim might arise).

Courts have found that in light of admissions made by insureds, prior knowledge exclusions precluded liability insurance coverage as a matter of law. See, e.g., Coregis Ins. Co., 2006 WL 2135782, at **10-12; Coregis Ins. Co. v. Lyford, 21 F.Supp.2d 695, 696-97, 699-700 (S.D. Tex. 1998). Because there is no legal or factual basis upon

31

which Illinois National might ultimately be obligated to cover plaintiff under its Policy, it is not obligated to advance defense costs as a matter of law.

Here, no additional proof is required for the Court to enforce the terms of the Application exclusion. The facts necessary to support Illinois National's coverage denial are clearly and indisputably established by the plea agreement of Bennett to the S-3 Indictment and Grant's own conviction on the S-4 Indictment. In light of those established facts, this Court should construe and then enforce the Application prior knowledge exclusion , or in the alternative the fraud and criminal acts exclusion, against plaintiff and vacate the preliminary injunction order. If there was any question about this previously, it has been emphatically answered by Grant's conviction.

## CONCLUSION

Based on the foregoing, it is respectfully requested that the Court reverse and vacate the Order granting plaintiff a preliminary injunction in its entirety and grant such other and further relief as this Court deems just and proper.

Dated: New York, New York
      June 24, 2008

                                    Respectfully submitted,

                                    D'AMATO & LYNCH, LLP

By:    s/Kevin J. Windels
           Kevin J. Windels (KJW-5477)
           Stephen F. Willig (SFW-9847)
           70 Pine Street
           New York, New York  10270
           (212) 269-0927
           *Attorneys for Defendant-Appellant*
           ILLINOIS NATIONAL INSURANCE
           COMPANY

# Exhibit A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:   PART 39
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
Federal Insurance Company,

                                        Plaintiff,

            -against-                                    Index No.600507/03

Tyco International Ltd., et al.
                                        Defendants,

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**HELEN E. FREEDMAN, J:**

        Plaintiff Federal Insurance Company ("Federal") commenced this declaratory judgment

action to resolve whether it is obligated to defend and indemnify defendants Tyco International,

Ltd. ("Tyco") and former Tyco officers and directors in the civil lawsuits and criminal

proceedings brought against those defendants.[1]  Defendant L. Dennis Kozlowski now moves for

an order directing that Federal pay him about $ 17.8 million as a first installment for the costs

and fees that he incurred to defend himself in the now-concluded criminal proceeding against

him and defendant Mark H. Swartz, *People v. Kozlowski*, index no. 5259/02 (Sup. Ct. N.Y. Co.)

(the "Criminal Action")[2],  and the related civil forfeiture action, *Morgenthau v. Kozlowski*, index

no. 403698/02 (Sup. Ct. N.Y. Co.) Federal opposes and  cross-moves for an order granting it

partial summary judgment and declaring that the Policies that it issued to Tyco do not cover

Kozlowski's or Swartz's defense costs in the Criminal Action.

_____

        [1]For the sake of concision, I will assume the reader's familiarity with the history of this
action, which prior decisions set forth in detail.  *See  Fed. Ins. Co. v. Kozlowski*, 2004 N.Y. Slip
Op. 50160(U)(Mar. 5, 2004) ("*Federal I*"), *aff'd as modified*, 18 A.D.3d 33 (1st Dept. 2005)
("*Federal II*").

        [2]Defined terms in *Federal I* and *Federal II* have the same meaning in this decision, unless
otherwise indicated.

For the reasons set forth below, Kozlowski's motion is denied and Federal's cross-motion is granted.

*Background: Criminal Action* – Kozlowski and Swartz were indicted for conspiring to steal Tyco assets and defraud its investors, and for falsifying business records to conceal their crimes. After a mistrial followed by a six-month trial ending in June 2005, the jury found Kozlowski and Swartz each guilty on twelve counts of grand larceny in the first degree (in violation of New York Penal Law ("NYPL") § 155.42), one count of conspiracy in the fourth degree (in violation of NYPL § 105.10[1]), one count of securities fraud (in violation of the Martin Act, N.Y. Gen. Bus. Law § 352-c[5])), and nine counts of falsifying business records in the first degree (in violation of NYPL § 175.10). The Court sentenced both Kozlowski and Swartz to prison terms of 8 and 1/3 years to twenty-five years. The Court also (1) ordered them to pay restitution to Tyco that totaling about $ 134 million, for which the Court held them jointly and severally liable, (2) ordered Swartz to pay Tyco an additional $1.2 million, and (3) imposed fines of $70 million on Kozlowski and $ 35 million on Swartz.

Kozlowski and Swartz were not convicted of a few of the charges. Of the thirty-one counts submitted to the jury, Kozlowski and Swartz were acquitted of "Count # 17", which charged that they falsified business records in the first degree in connection with the "Tyco International (US) Inc. Florida Corporate Headquarters Relocation program." Moreover, certain were never submitted to the jury (the "Dropped Charges.") These included a charge of enterprise corruption, two grand larceny charges, and a falsifying of business records charge.

*Coverage provisions* – Moving for an order directing payment, Kozlowski claims that Federal must reimburse his defense expenses for the Criminal Action pursuant to "Insuring

2

Clause 1" of the Executive Liability and Indemnification section of the Policies (the "ELI

Section"), which applies to "Loss for which the Insured Person is not indemnified by [Tyco] and

which the Insured Person becomes legally obligated to pay on account of any Claim first made

against him . . . during the Policy Period . . . for a Wrongful Act."[3]

The Policies contain two relevant coverage exclusions. Section 6(b) of the ELI Section

(the "Fraudulent Acts Provision") provides:

> [Federal] shall not be liable under Insuring Clause 1 for Loss on account of any
> Claim made against any Insured Person . . . based upon, arising from, or in
> consequence of any deliberately fraudulent act or omission or any willful violation
> of any statute or regulation by such Insured Person, if a judgment or other final
> adjudication adverse to the Insured Person establishes such a deliberately
> fraudulent act or omission or willful violation . . . .

Section 6(c) of the ELI Section (the "Personal Profit Provision") provides:

> [Federal] shall not be liable under Insuring Clause 1 for Loss on account of any
> Claim made against any Insured Person . . . based upon, arising from, or in
> consequence of such Insured Person having gained in fact any personal profit,
> remuneration or advantage to which such Insured Person was not legally entitled.

*Prior Rulings* – Before the verdicts in the Criminal Action were rendered, this Court and

the First Department issued decision that addressed Kozlowski's rights to coverage under the

Policy.   In March 2004, this Court granted Kozlowski's summary judgment motion (the "Prior

Motion") in part and declared (among other things) that the Policies obligated Federal to

reimburse Kozlowski for those defense expenses. *Federal I*, 2004 N.Y. Slip Op. 50160(U) at

*7-*8 &*9.  This Court found that "[i]f any portion of a complaint [against an insured] might

result in coverage, the insurer must defend or pay defenses expenses for all claims, both covered

and non-covered. *Id.* at *8. The Personal Profit Provision did not excuse Federal from

---

[3]Capitalized terms in the quotations from the Policy are defined in it.

3

coverage[4], because "[w]hile the Indictment alleges that Kozlowski obtained money illegally through the criminal enterprise, it also accuses him of crimes from he did not directly profit." *Id.* at *7.

On appeal, the First Department limited Federal's duty to pay Kozlowski's defense costs to "only those costs relating to liabilities that fall under the coverage provided, i.e., defense costs for the covered claims." *Federal II*, 18 A.D.3d at 38. The Appellate Division distinguished an insurer's duty to defend from its duty to pay defense expenses under its policy: if the policy imposes a duty to defend, insurer must "afford a defense to the insured for covered as well as non-covered claims if the latter are intertwined with covered claims," but if the policy only imposes a duty to pay defense expenses, the insurer could apportion them between covered and excluded claims. *Id.* at 41. Yet while an insurer can apportion defense expenses, its duty to reimburse the insured for expenses arises when the insured pays them. *Id.* at 41-42. Accordingly, the Appellate Division found,

> while Federal must pay defense costs as they are incurred in the [Criminal Action], its ultimate liability for such costs is only with respect to such liabilities as fall under the coverage provided. To the extent such liabilities are excluded from coverage by the [Personal Profit Provision], Federal is not required to pay for defense costs. Since this allocation cannot be made at this juncture . . . Federal must pay all defense costs as incurred, subject to recoupment when Kozlowski's liabilities, if any, are determined.

*Id.* at 42.

---

[4] The courts did not address whether the Fraudulent Acts Provision affected coverage in *Federal I* and *Federal II*. The parties did not raise the issue in connection with the Prior Motion, since it was decided before the verdict in the Criminal Action.

4

After *Federal I* was issued, Federal commenced an interpleader action to resolve the

competing claims to the Policy proceeds by Kozlowski and others. *Fed. Ins. Co. v. Kozlowski*,

index no. 601416/04 (Sup. Ct. N.Y. Co.) (the "Interpleader Action").

*Discussion: Motion* – Kozlowski's application for an interim payment from the Policy

proceeds is denied at this juncture because virtually all of Kozlowski's defense expenses are

excluded by his convictions in the Criminal Action. If Kozlowski had any pre-conviction right to

be reimbursed for expenses as he incurred them, he never exercised it because he never sent

Federal any invoices for his defense costs. *See Lehrer McGovern Bovis, Inc. v. Halsey Constr.*

*Corp.*, 254 A.D.2d 335, 336 (2d Dept. 1998) (insured cannot seek payment of defense costs if it

fails to provide insurer with copies of the bills it paid). In any event, Kozlowski's motion papers

do not include any competent evidence of the amount and reasonableness of the defense costs he

has incurred, and all claims to the proceeds of the Policy must be pursued in the Interpleader

Action. *See* Interpleader Action, dec. & order dated April 30, 2004.

*Cross-motion* – Federal's cross-motion for a declaration that the Policies do not cover any

of Kozlowski's and Swartz's defense costs in the Criminal Action is granted because virtually all

of Kozlowski's and Swartz's defense expenses are now excluded from coverage by the

Fraudulent Acts or Personal Profit Provisions, and Kozlowski and Swartz make no showing that

any of their defense expenses can be allocated to covered losses.[5] Before Kozlowski and Swartz

were convicted, Federal had no duty to reimburse their defense costs because they never

---

[5]In fact, Kozlowski did not submit opposition to the Federal cross-motion, and Swartz
does not address the issue of allocation, but merely requests that the Court stay its decision on the
cross-motion while his criminal appeal is pending. That request is denied because Swartz's
conviction and sentence constitute a "judgment" within the meaning of the Fraudulent Acts
Provision.

presented Federal with their bills, and after they were convicted on thirty of the thirty-one counts,

the Fraudulent Acts Provision excluded the defense costs connected with those thirty offenses.

In addition, the Personal Profit Provision excluded all costs connected with crimes from which

Kozlowski and Swartz directly profited.

In theory, some of Kozlowski's and Swartz's defense costs would be payable if they

could be apportioned to covered losses to which neither the Fraudulent Acts nor the Personal

Profit Provisions apply. These include the cost of defending Kozlowski and Swartz against

Count # 17 and the Dropped Charge for falsifying business records, for they which were not

convicted and which do not accuse them of concealing crimes from which they directly profited.[6]

However, as a practical matter it seems all but impossible to allocate defense costs between the

covered claims and the predominant excluded claims, since Kozlowski and Swartz were

defended in a single criminal proceeding that ended with their conviction of all but one count.

Moreover, Konzlowski's and Swartz's fail to submit billing records or any other evidentiary

basis for apportioning costs specifically to covered expenses. In any event, the covered costs

would be a minuscule portion of the total amount.

ORDERED that the motion by defendant L. Dennis Kozlowski for an order directing

payment is denied and the cross-motion by plaintiff Federal Insurance Company for partial

summary judgment is granted, and it is further

---

[6] Also, defense expenses allocated to the Dropped Charge for enterprise corruptionwould be partially covered, since it was based on "pattern acts" that corresponded to the other counts in the indictment, including Count # 17. However, the two Dropped Charges of grand larceny fall with the Personal Profit Provision because they alleged that Kozlowski and Swartz stole for their own gain.

6

ORDERED AND ADJUDGED that Executive Protection Policy 8121-34-42-H that

plaintiff Federal Insurance Company issued to defendant Tyco International, Ltd. providing

coverage from March 15, 2001 to March 15, 2002, as extended by endorsement to March 15,

2003, does not provide coverage for the defense costs incurred by defendants Defendant L.

Dennis Kozlowski and Mark H. Swartz in *People v. Kozlowski*, index no. 5259/02 (Sup. Ct. N.Y.

Co.)


Dated: August 10, 2006

                              Enter:

                              _____
                              Helen E. Freedman, J.S.C.


7

<u>**AFFIDAVIT OF SERVICE VIA E-MAIL AND OVERNIGHT MAIL**</u>

STATE OF NEW YORK )
                          ss.:
COUNTY OF NEW YORK )

               **STEPHEN F. WILLIG**, being duly sworn, deposes and says: deponent is not a

party to the action, is over 18 years of age and resides in Hazlet, New Jersey.

               On June 24, 2008, deponent served the within **DEFENDANT/APPELLANT**

**ILLINOIS NATIONAL INSURANCE COMPANY'S BRIEF IN SUPPORT OF ITS**

**APPEAL OF THE BANKRUPTCY COURT'S ORDER GRANTING PLAINTIFF A**

**PRELIMINARY INJUNCTION** upon:

Norman Eisen, Esq.
Zuckerman Spaeder, LLP
1800 M Street, N.W.
Washington, D.C.  20036-5802
neisen@zuckerman.com

Steven Wilamowsky, Esq.
Bingham McCutcheon, LLP
399 Park Avenue
New York, NY  10022
steven.Wilamowsky@bingham.com

Laura E. Neish, Esq.
Zuckerman Spaeder, LLP
1540 Broadway, Suite 1604
New York, NY  10036-4039
lneish@zuckerman.com

Michael T. Hannafan, Esq.
Blake Tyler Hannafan, Esq.
Hannafan & Hannafan, Ltd.
1 East Wacker Drive, Suite 1208
Chicago, Illinois  60601
mth@hannafanlaw.com
bth@hannafanlaw.com

the attorneys for the plaintiff and the plan administrator herein at the e-mail address designated

and agreed to in writing by said person for that purpose by electronically delivering a true copy

thereof, and also at the address(es) designated by said attorney(s) for that purpose by leaving a

true copy of same enclosed in a pre-paid properly addressed wrapper for UPS overnight delivery.

                          s/ Stephen F. Willig
                          **STEPHEN F. WILLIG**

Sworn to before me this
24th day of June, 2008

s/ Kevin J. Windels
      NOTARY PUBLIC

#292957v1