UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------- X
TONE N. GRANT,                                              :     Case No. 08-CV-4252 (GEL)
                                                            :
                    Plaintiff-Appellee,                     :     *Electronically Filed*
          v.                                                :
                                                            :
ILLINOIS NATIONAL INSURANCE COMPANY and                     :
NATIONAL UNION FIRE INSURANCE COMPANY                       :
OF PITTSBURGH, PENNSYLVANIA,                                :
                                                            :
                    Defendants-Appellants.                  :
-------------------------------------------------------------------------- X


**APPELLEE TONE N. GRANT'S MEMORANDUM IN OPPOSITION TO ILLINOIS NATIONAL INSURANCE COMPANY'S APPEAL FROM THE BANKRUPTCY COURT'S ORDER GRANTING APPELLEE A PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 1

COUNTERSTATEMENT OF ISSUES PRESENTED ............................................................... 2

STANDARD OF APPELLATE REVIEW ................................................................................... 2

STATEMENT OF FACTS ............................................................................................................ 2

    A.    Refco And The Underlying Actions .................................................................... 2

    B.    The Illinois National Insurance Contract ............................................................ 3

    C.    Illinois National's Acknowledgement of Its Duty to Advance ............................ 4

    D.    The Preliminary Injunction Motion ..................................................................... 4

ARGUMENT .................................................................................................................................. 6

I.    THE BANKRUPTCY COURT DID NOT ABUSE ITS DISCRETION IN GRANTING THE PRELIMINARY INJUNCTION. ......................................................... 6

    A.    The Bankruptcy Court Did Not Misinterpret the "Arising Therefrom" Language in the Illinois National Policy. ............................................................. 6

    B.    New York Courts, Including This Court, Have Recognized That Insureds Are Entitled to Advancement of Defense Costs Where Coverage Is Disputed. .............................................................................................................. 8

    C.    It Is Equally Well-Established That Preliminary Injunctive Relief Is Appropriate to Enforce Insureds' Advancement Rights .................................... 10

II.    THE APPLICABILITY OF THE CRIMINAL ACTS EXCLUSION IS NOT AT ISSUE IN THIS APPEAL. ................................................................................................ 12

CONCLUSION ............................................................................................................................. 16

# TABLE OF AUTHORITIES

### Federal Cases

*American Casualty Company v. United Southern Bank,* 950 F.2d 250 (5th Cir. 1992) ............... 14

*Axis Reinsurance Co. v. Bennett,* 07 Civ. 7924 (GEL) (S.D.N.Y. June 26, 2008). ....................... 8

*Butler v. Eaton*, 141 U.S. 240 (1891). ............................................................................................ 15

*Great American Insurance Company v. Gross*, No. Civ.A. 305CV159, 2005 WL 1048752 (E.D. Va. May 3, 2005) .................................................................................................................. 7

*In re 139-141 Owners Corp.*, 313 B.R. 364 (S.D.N.Y. 2004) ........................................................ 2

*In re Adelphia Communications Corporation*, No. 02-41729 (REG), 2004 WL 2186582 (S.D.N.Y. Sept. 27, 2004) .................................................................................................... 2, 11

*In re Adelphia Communications Corp.*, 323 B.R. 345 (Bankr. S.D.N.Y. 2005) ......................... 11

*In re Allied Digital Techs. Corp.*, 306 B.R. 505, 513 (Bankr. D. Del. 2004) .............................. 11

*In re Cody, Inc.*, 338 F.3d 89 (2d Cir. 2003) ................................................................................. 2

*In re Davis*, 169 B.R. 285 (E.D.N.Y. 1994) ................................................................................ 12

*In re WorldCom, Inc. Securities Litigation*, 354 F. Supp. 455 (S.D.N.Y. 2005) ................ 9, 10, 11

*National Union Fire Insurance Company of Pittsburgh, Pa. v. Continental Illinois Corp.,* 666 F.Supp. 1180 (N.D. Ill. 1987) ............................................................................................... 14

*Petition of Singer*, 205 B.R. 355, 356 ............................................................................................ 2

*Steadfast Insurance Company v. Stroock & Stroock & Lavan LLP,* 277 F. Supp. 2d 245 (S.D.N.Y. 2003) ..................................................................................................................... 13

*Stonewall Insurance Co. v. Asbestos Claims Management Corp.*, 73 F.3d 1178 (2d Cir. 1995) ... 9

*USA Recycling, Inc. v. Town of Babylon*, 66 F.3d 1272 (2d Cir. 1995) ....................................... 2

*Wedtech Corp. v. Fed. Ins. Co.*, 740 F. Supp. 214, 221 (S.D.N.Y. 1990) ................................... 11

### State Cases

*Continental Caualty Company v. Rapid-American Corporation*, 80 N.Y.2d 640 (1993) ........... 13

iv

*Federal Insurance Company v. Tyco International Ltd.*, 792 N.Y.S. 2d 397 (N.Y. App. Div. 2005) ........................................................................................................................... 9, 10

*Federal Insurance Company v. Tyco International Ltd.*, No. 6005007/03, 2004 WL 583829 (N.Y. Sup. Ct. Mar. 5, 2004) ................................................................................................. 9

*U. S. Fire Insurance Company of Pittsburgh, Pa. v. New York Marine and General Insurance Co.,* 706 N.Y.S.2d 377 (N.Y. App. Div. 2000) ........................................................................ 7

**Federal Rules**

Fed. R. Bankr. P. 8013 ...................................................................................................................... 2

**Other Authorities**

Restatement (Second) of Judgments § 16 (Westlaw 2008) .......................................................... 15

Restatement (Second) of Judgments § 27, comment o. (Westlaw 2008) .................................... 15

## PRELIMINARY STATEMENT

Appellee Tone Grant submits this memorandum in opposition to Illinois National Insurance Company's appeal of the Bankruptcy Court's grant of a preliminary injunction. That injunction required Illinois National to advance Mr. Grant's defense costs pending an adjudication of coverage under the Illinois National Policy.

Illinois National devotes the bulk of its argument to an issue that was not before the Bankruptcy Court when it made the decision under review and which is not properly before this Court on appeal: whether or not coverage exists under the Illinois National Policy for the claims Mr. Grant has made under its policy. The real issue in this appeal is much narrower: did the Bankruptcy Court act within the bounds of its discretion when it issued a preliminary injunction requiring Illinois National to advance defense costs? The answer is an unequivocal "yes." The Bankruptcy Court understood and applied the well-established principle of New York law, recognized and applied by this Court and others, that insurers have a duty to advance defense costs notwithstanding the existence of a coverage dispute. Before issuing its injunction, the Bankruptcy Court carefully considered a complex factual situation, made findings supported by the record, and applied clear New York law to order advancement.

Against that record, Illinois National contends that Mr. Grant's April 17, 2008 criminal conviction—which occurred nearly a month after the decision on appeal—triggered an exclusion barring coverage under the Illinois National Policy. Like the three remaining insurers in the main tower of Refco directors & officers' insurance, Illinois National may seek an adjudication of the applicability of this exclusion by way of summary judgment or at trial. We do not believe Illinois National would succeed, but, in any event, an appeal of a Bankruptcy Court order is not the appropriate vehicle for their arguments.

-2-

This Court should affirm the Bankruptcy Court's preliminary injunction order.

## COUNTERSTATEMENT OF ISSUES PRESENTED

Did the Bankruptcy Court abuse its discretion in granting Appellee's motion for a preliminary injunction where: 1) the Illinois National Policy provided for advancement of defense costs prior to the final disposition of a claim; 2) Mr. Grant met his burden of showing he was entitled to that advancement; and 3) the Bankruptcy Court carefully considered the impact of Phillip Bennett's guilty plea on Illinois National's duty to advance?

## STANDARD OF APPELLATE REVIEW

A district court generally reviews the bankruptcy court's conclusions of law *de novo* and its findings of fact for clear error. *See In re Adelphia Commc'ns Corp*, No. 02-41729 (REG), 2004 WL 2186582, at *7 (S.D.N.Y. Sept. 27, 2004) (citing *In re Cody, Inc.*, 338 F.3d 89, 94 (2d Cir. 2003); *In re 139-141 Owners Corp.*, 313 B.R. 364, 367 (S.D.N.Y. 2004); Fed. R. Bankr. P. 8013).

Contrary to Appellant's statement of the standard, however (Ill. Nat. Br. at 3) in reviewing a bankruptcy court's issuance of a preliminary injunction, "the standard of review is abuse of discretion—which may be found where the Bankruptcy Court, in granting injunctive relief, has relied on clearly erroneous findings of fact or on an error of law." *In re Adelphia*, 2004 WL 2186582, at *7; *see also Petition of Singer*, 205 B.R. 355, 356 (S.D.N.Y. 1997) (citing *USA Recycling, Inc. v. Town of Babylon*, 66 F.3d 1272, 1281 (2d Cir. 1995)).

## STATEMENT OF FACTS

### A. Refco And The Underlying Actions

Given this Court's familiarity with the proceedings arising out of the bankruptcy of Refco, Inc., Mr. Grant focuses only on the facts most relevant to this appeal. Refco's collapse in

October 2005 led to a series of civil lawsuits, government investigations, and criminal proceedings, many of which remain pending (collectively, the "Underlying Actions"). One of the Underlying Actions is the criminal proceeding *United States v. Phillip Bennett, Robert Trosten and Tone Grant,* S3 05 Cr. 1192 (NRB) (S.D.N.Y.) (the "Criminal Action"). Mr. Grant's trial[1] in the Criminal Action began on March 24, 2008, and the jury returned a guilty verdict against Mr. Grant on April 17, 2008. Mr. Grant is scheduled to be sentenced on August 7, 2008, and he plans to appeal his conviction.

### B.  The Illinois National Insurance Contract

Illinois National's Directors, Officers and Corporate Liability Insurance Policy No. 931-75-64 (the "Illinois National Policy" or "Policy") provides Refco's directors and officers with coverage for "Loss of each and every Director, Officer or Employee of the Company arising from a Claim…for any Wrongful Act." (Declaration of William A. Schreiner, Jr. dated March 10, 2008 ("March 10, 2008 Schreiner Decl.")[2] at Ex. A at Definition (i)(1).)

The Illinois National Policy requires Illinois National to advance defense costs as incurred during the pendency of Claims:

> The Insurer does not assume any duty to defend, provided, however, the Named Entity may at its sole option tender to the Insurer the defense of a claim for which coverage is provided...**Regardless of whether the defense is so tendered, the Insurer shall advance Defense Costs (excess of the applicable retention amount) of such Claim prior to its final disposition.**

(March 10, 2008 Schreiner Decl., Ex. A at Insuring Agreement (1) and Clause (8) (emphasis added).)

Illinois National's contractual obligation to advance Defense Costs through final

---

[1] Before trial, Mr. Grant's co-defendants pled guilty and he was tried under a superseding indictment captioned *United States v. Tone Grant*, S4 05 Cr. 1192 (NRB) (S.D.N.Y.).

disposition of a Claim is not limited to the trial and sentencing phases of a case. Illinois National has also expressly contracted to advance pending appeal. The policy defines "Defense Costs" to include "reasonable and necessary fees, costs and expenses … from the investigation, adjustment, defense, and **appeal** of a Claim … ." (March 10, 2008 Schreiner Decl., Ex. A at Definition (e) (emphasis added).)

### C. Illinois National's Acknowledgement of Its Duty to Advance

Beginning in December 2006, Mr. Grant worked to secure advancement of his defense costs from Illinois National. Illinois National acknowledged its duty to advance defense costs for Mr. Grant so he could defend himself against the Underlying Actions, including the Criminal Action. (Letter from J. Limb to B. Hannafan dated June 8, 2007, a true copy of which is attached to the March 10, 2008 Schreiner Decl. as Ex. E; Letter from D. Fitzpatrick to A. Lieberman dated January 22, 2008, a true copy of which is attached to the March 10, 2008 Schreiner Decl. as Ex. K.)

On March 7, 2008—less than three weeks before the commencement of Mr. Grant's criminal trial— Appellee's counsel contacted Illinois National to inquire about the status of payment of the bills that were submitted. Illinois National responded that it was reconsidering its duty to advance defense costs on behalf of Mr. Grant, and, while it reconsidered, would not be paying the bills that had been submitted to Illinois National for payment. (March 10, 2008 Schreiner Decl. at ¶ 15, Ex. M.)

### D. The Preliminary Injunction Motion

On March 10, 2008, Mr. Grant commenced this adversary action and filed a motion

---

(continued)
[2] The Declaration of William A. Schreiner, Jr. dated March 10, 2008 is attached as Exhibit D to the Declaration of Kevin Windels dated June 24, 2008 ("Windels Decl.").

asking the Bankruptcy Court to compel Illinois National to advance his defense costs in the Underlying Actions.

After considering the parties' written submissions and hearing argument from both sides, the Bankruptcy Court granted the motion for a preliminary injunction. (Hearing Tr. at 37:14-47:4, attached to Windels Decl. as Ex. M.) The Bankruptcy Court began by noting the standard for a preliminary injunction requires irreparable injury and sufficiently serious questions going to the merits or likelihood of success on the merits. (Hearing Tr. at 39:15-20.) With respect to the first prong of the test, that Court held that:

> As far as the irreparable injury requirement goes I have in the past in similar insurance coverage litigation involving Axis Insurance Company agreed with Judge Cote in Worldcom that under these circumstances the failure to receive defense costs when they're incurred in and of itself constitutes an immediate and direct injury, Id. at 469. That injury, I believe, is irreparable where the movant is seeking the advancement of defense costs in connection with a criminal trial where obviously at stake is not only money but the movant's freedom.

(Hearing Tr. at 40:3-40:11.)

Turning to the second prong of the test (sufficiently serious questions going to the merits) the Bankruptcy Court also carefully weighed an argument made by Illinois National in its opposition to the preliminary injunction, and again in this appeal: the impact of the guilty plea of Refco CEO Phillip Bennett:

> Moreover, based on my review of the indictment – and I do not believe counsel for Illinois National has pointed out anything to the contrary – Mr. Bennett could be found guilty of the crimes in the indictment without necessarily pleading guilt going back to the involvement of Mr. Grant as an employee of Refco. That leaves the issue under the application of whether the claims against Mr. Grant for which he seeks defense cost coverage arise – using the verb – [under] the warranty or the application from the crimes to which Mr. Bennett has pled. I do not believe that they necessarily as a matter of law would arise from those claims. Conceivably, they would not or at least some of them would not.

(Hearing Tr. at 45:7-45:18.) The Court thus found that there were sufficiently serious

-5-

1887938.1

questions going to the merits to justify a preliminary injunction. (Hearing Tr. at 46:7-47:4.)

The Advancement Order directed Illinois National to advance defense costs to Mr. Grant: (a) pending a final determination by the Bankruptcy Court or another Court of competent jurisdiction that Illinois National has no right to withhold Defense Cost advances or (b) until there is a final determination by a court of competent jurisdiction regarding coverage under the Illinois National Policy. (Windels Decl. Ex. K.) This appeal followed.

## ARGUMENT

**I.     THE BANKRUPTCY COURT DID NOT ABUSE ITS DISCRETION IN GRANTING THE PRELIMINARY INJUNCTION.**

   **A.     The Bankruptcy Court Did Not Misinterpret the "Arising Therefrom" Language in the Illinois National Policy.**

Illinois National argues that the Bankruptcy Court misinterpreted the phrase "arising therefrom" in the Policy. Specifically, Illinois National contends both that the Bankruptcy Court misread the applicable facts and misapplied the case law, but in neither case does Illinois National meet the necessary standard to succeed on its appeal.

Illinois National cannot demonstrate that the Bankruptcy Court committed a clear error of fact when that Court found that Mr. Bennett's guilty plea did not preclude Illinois National from advancing Mr. Grant's defense costs – the showing necessary for it to succeed on this appeal. On the contrary, the Bankruptcy Court based its decision on its review of the entire factual record before it – including a careful review of Mr. Bennett's guilty plea, which Illinois National argued voided its duty to advance defense costs for Mr. Grant. The Bankruptcy Court reviewed and considered the S3 Indictment and Mr. Bennett's plea allocution, and concluded that Illinois National had not established that "all of the claims for which Mr. Grant seeks coverage are necessarily arising under the matters to which Mr. Bennett has pled guilty." (Hearing Tr. at 44: 16-20; 25.) This decision was not clearly erroneous— the Bankruptcy Court properly reasoned

that "Mr. Bennett …. pled guilty to every count of the indictment, however, he did not acknowledge the accuracy of every allegation in the indictment." (*Id.* at 45:5-7.)[3] Nowhere in its brief does Illinois National demonstrate that the Bankruptcy Court made a clear error of fact in its ruling.

Apparently recognizing it cannot show a clear error of fact, Illinois National also contends that the Bankruptcy Court made an error of law. It cannot, though, demonstrate an abuse of discretion sufficient to succeed. The Bankruptcy Court correctly relied in part on *Great American Insurance Company v. Gross*, No. Civ.A. 305CV159, 2005 WL 1048752 (E.D. Va. May 3, 2005), which held that the guilty pleas of certain insureds did not permit the insurer to discontinue advancing defense payments on the theory that the pleas necessarily established the applicability of the policy's Fraud Exclusion. *See Id*. at *6. Rather, the court determined that the impact of the guilty pleas on "the underlying claims … has yet to be determined." *Id.* at *5-*6.

On appeal, Illinois National contends that the Bankruptcy Court wrongfully conflated the "as contributed to or brought about" language at issue in *Great American* with the "arising therefrom" language in the Illinois National Policy application. (Ill. Nat. Br. at 18-20.) It argues that these two different phrases have a substantively different meaning – but even its own quoted cases show great similarity in the meaning of these two phrases. For example, *U. S. Fire Insurance Company of Pittsburgh, Pa. v. New York Marine and General Insurance Co.,* 706 N.Y.S.2d 377 (N.Y. App. Div. 2000), holds that the words "arising out of the use" are "ordinarily understood to mean originating from, incident to, or having connection with ... ." *Id.* at 378-79. That definition actually supports the Bankruptcy Court's ruling. It certainly does not demonstrate the substantive difference between "arising therefrom" and the "as contributed to or

---

[3] The S4 Indictment contains the same charges as against Mr. Grant as the S3 Indictment, although a number of the
(continue)

brought about" language at issue in *Great American* and relied on by the Bankruptcy Court. Illinois National has not demonstrated that the Bankruptcy Court committed an error of law.

    **B.    New York Courts, Including This Court, Have Recognized That Insureds Are Entitled to Advancement of Defense Costs Where Coverage Is Disputed.**

Just three weeks ago, this Court affirmed the Bankruptcy Court's application of the well-established rule that, where an insurance contract provides for advancement of defense expenses and a covered claim is brought against an insured, the insurer has no right to unilaterally terminate such a duty or refuse to perform it unless and until there is a final adjudication that there is no coverage. *Axis Reinsurance Co. v. Bennett,* 07 Civ. 7924 (GEL) (S.D.N.Y. June 26, 2008). Illinois National seeks to turn this principle on its head by arguing the Bankruptcy Court should have required Mr. Grant to prove coverage under the Illinois National Policy prior to ordering advancement. (Ill Nat. Br. at 13-14; 23-25.) Its argument should be rejected for the same reason this Court rejected Axis' arguments last month: it has no support in the policy language or relevant caselaw.

The Illinois National Policy plainly provides that Illinois National "shall advance Defense Costs" of a claim "prior to its final disposition." (March 10, 2008 Schreiner Decl., Ex. A at Insuring Agreement (1) and Clause (8).) At the time the Advancement Order issued, there was no such "final disposition" with respect to Plaintiff Grant in the Criminal Action or any other Underlying Action (nor is there today, in advance of a final disposition at trial or on appeal in any of those actions).[4] The Illinois National Policy does not give Illinois National the right to cease advancing prior to any such final disposition. Illinois National's claim, therefore, that

---

(continued)
factual allegations are altered.

[4] Because proceedings are still ongoing in the Criminal Action, there is no "final disposition" in the case that would terminate Illinois National's duty to advance defense costs which, as noted above, runs through appeal.

-8-

where the Policy establishes a duty to advance and not to defend … there is no obligation to advance defense costs," unless coverage is established (Ill. Nat. Br. at 23) belies its own policy language. The Illinois National Policy explicitly contemplates that the duty to advance precedes the ultimate determination as to coverage.[5] Indeed, if Illinois National had wanted any rights with respect to advancement greater than a right to repayment, it could have bargained for them when it put the Policy in place.

Illinois National's argument lacks support not only in the Policy, but under the applicable law. Many courts have specifically required issuers of D&O policies like the Illinois National Policy to advance defense costs while the insurer considers or disputes coverage. As this Court well knows and understands, these cases have recognized that the duty to pay defense costs is far broader than the duty to indemnify, and "exists whenever a complaint against the insured alleges claims that may be covered under the insurer's policy." *In re WorldCom, Inc. Sec. Litig.*, 354 F. Supp. 455, 464 (S.D.N.Y. 2005) (quoting *Fed. Ins. Co. v. Tyco Int'l Ltd.*, No. 6005007/03, 2004 WL 583829, at *6 (N.Y. Sup. Ct. Mar. 5, 2004), *aff'd in relevant part*, 792 N.Y.S. 2d 397 (N.Y. App. Div. 2005)).

In *WorldCom*, the court made clear that questions regarding coverage do not affect the duty of advancement. 354 F. Supp. 2d at 467. In that case, Judge Cote ruled against the insurer, holding that its duty to advance defense costs to its insured in connection with the underlying actions against him was not abated simply because ultimate coverage was in dispute. *Id.* at 464-67. In other words, Judge Cote ruled that an insurer's contractual obligation to pay defense costs

---

[5] Illinois National's citation to *Stonewall Insurance Co. v. Asbestos Claims Management Corp.*, 73 F.3d 1178, 1219 (2d Cir. 1995), is inapposite because that case concerned the ultimate issue of coverage for defense costs, not advancement.

continues unless and until there is a final adjudication that the policy does not provide coverage. *Id.* at 466.

In *Kozlowski*, the Appellate Division similarly required a D&O insurer (Federal) to advance defense costs for underlying actions while coverage was in dispute. 792 N.Y.S. 2d at 404. The D&O policy required Federal to pay "on behalf of" directors and officers of Tyco International all "Loss," including defense costs, that they were legally obligated to pay on account of Claims. *Id.* at 399. This is precisely what Illinois National is required to do under the Illinois National Policy, and what Illinois National has acknowledged is its duty to do. (March 10, 2008 Schreiner Decl., Ex. A at 1 and Ex. K.)

Because the Illinois National Policy provides that Illinois National must advance to Mr. Grant his defense costs for the Underlying Actions regardless of whether or not the insurer disputes coverage, the Bankruptcy Court's decision to order advancement was not clearly erroneous.

### C. It Is Equally Well-Established That Preliminary Injunctive Relief Is Appropriate To Enforce Insureds' Advancement Rights.

On Mr. Grant's motion for a preliminary injunction, the Bankruptcy Court weighed whether the standard for prohibiting injunctions was met:

> Where a preliminary injunction grants only part of the relief to which a movant would be entitled on the merits and requires a party "to do what it should have done earlier," then it is judged under the standard for prohibiting injunctions and not the heightened standard for mandatory injunctions.

*WorldCom*, 354 F. Supp. 2d at 463.

The Bankruptcy Court was fully cognizant of this standard and applied it carefully. (Hearing Tr. at 40:3 *et seq.*) On appeal, Illinois National must show that the Bankruptcy Court abused its discretion: "the standard of review is abuse of discretion—which may be found where

-10-

the Bankruptcy Court, in granting injunctive relief, has relied on clearly erroneous findings of fact or on an error of law." *In re Adelphia Commc'ns Corp.*, No. 02-41729 (REG), 2004 WL 2186582, at *7 (S.D.N.Y. Sept. 27, 2004).

Judge Drain did not abuse his discretion in finding that Mr. Grant faced irreparable harm absent an advancement order, especially given the timing of Illinois National's decision to deny advancement of defense costs on the eve of Mr. Grant's criminal trial. While Illinois National complains that "there was no potential damage to [Mr. Grant] that could not be rectified by financial compensation," (Ill. Nat. Br. at 26) Judge Cote in the WorldCom case recognized that, "*The failure to receive defense costs when they are incurred constitutes 'an immediate and direct injury.*'" *WorldCom*, 354 F. Supp. 2d at 469 (quoting *Wedtech Corp. v. Fed. Ins. Co.*, 740 F. Supp. 214, 221 (S.D.N.Y. 1990)) (emphasis added). In *WorldCom,* Judge Cote explained why the failure to advance defense costs during pending litigation constitutes irreparable injury:

> Every party, including each director defendant, requires effective representation. It is impossible to predict or quantify the impact on a litigant of a failure to have adequate representation at this critical stage of litigation. The ability to mount a successful defense requires competent and diligent representation. ***The impact of an adverse judgment will have ramifications beyond the money that will necessarily be involved. There is the damage to reputation, the stress of litigation, and the risk of financial ruin – each of which is an intangible but very real burden.***

354 F. Supp.2d at 469 (emphasis added); *see also In re Adelphia Commc'ns Corp.*, 323 B.R. 345, 374 (Bankr. S.D.N.Y. 2005) (finding that financial inability of directors or officers to defend themselves has serious consequences, and is irreparable); *In re Allied Digital Techs. Corp.*, 306 B.R. 505, 513 (Bankr. D. Del. 2004) (granting directors and officers relief from stay to obtain payment for defense costs, finding that they otherwise would be prevented from conducting a meaningful defense to the Trustee's claims "and may suffer substantial and irreparable harm").

The Bankruptcy Court correctly concluded that, as in *Great American*, sufficiently serious questions going to the merits of the litigation existed, which, in light of the irreparable harm posed by non-payment of defense costs, warranted issuance of the Advancement Order. (Hearing Tr. at 46:15-20.) The Bankruptcy Court's decision was in line with recent precedent and well within the Bankruptcy Court's discretion.

Illinois National's claim that Mr. Grant's "concerns about losing the criminal trial … are gone, as that has now occurred" is beside the point. (Ill. Nat. Br. At 27.) A court reviewing a preliminary injunction order must evaluate the risk of irreparable harm at the time the order was issued, not at the time the order is reviewed. *See In re Davis*, 169 B.R. 285, 293 (E.D.N.Y. 1994) ("[O]n appeal from an order of the bankruptcy court, the district court should not consider any evidence not before the bankruptcy court at the original hearing."). In any event, Mr. Grant still faces considerable defense costs in preparing for sentencing and appeal, as well as defending against the allegations against him in the other Underlying Actions. Nor is his freedom any less at stake in those post-trial proceedings. (Hearing Tr. 40:8-40:11.)

## II.   THE APPLICABILITY OF THE CRIMINAL ACTS EXCLUSION IS NOT AT ISSUE IN THIS APPEAL.

On appeal, Illinois National for the first time raises the new issue that exclusion 4(c) of the Illinois National Policy bars coverage. That exclusion precludes payment for "Loss in connection with a Claim…arising out of, based upon, or attributable to the committing in fact of any criminal, fraudulent or dishonest act, or any willful violation of any statute, rule or law." (March 10, 2008 Schriener Decl. at Ex. A at p. 6.) Illinois National argues that Mr. Grant's conviction – which occurred after the order from which Illinois National appeals was entered – now justifies reversal of that order under that exclusion.

The argument fails for several reasons. First, Illinois National improperly raises it on appeal here for the first time – rather than, for example, by way of a motion for summary judgment, with the attendant heavy legal burden that Illinois National would have to bear after both sides have had a full opportunity to develop the record. As we discuss further below, the conviction alone is by no means the end of Mr. Grant's involvement in the criminal proceeding, given that he has not yet been sentenced and any criminal judgment will be the subject of an appeal. Litigation of Mr. Grant's future right to advancement on this posture raises a host of complex issues (such as the application of the policy's obligation to cover appellate fees and costs) that are not yet properly developed and presented to the Court. The premature effort to resolve these issues through the vehicle of an appeal of a preliminary injunction should not be countenanced.

Even if the Court were to consider Illinois National's argument, it is apparent that Illinois National has not met the burden it bears to prove that this exclusion applies. The insurer bears the burden of proving that an exclusion bars coverage. *See, e.g., Cont'l Cas. Co. v. Rapid-Am. Corp.*, 80 N.Y.2d 640, 652 (1993) ("[A]n insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case."). To attempt to meet this burden, Illinois National breezily argues that Mr. Grant's conviction establishes that "he has been found 'in fact' to have committed all of the criminal and fraudulent acts alleged." (Ill. Nat. Br. at 21.) But it makes no attempt to define "in fact" with reference to Mr. Grant's conviction, either legally or factually.

The only legal authority Illinois National relies upon in this connection, *Steadfast Insurance Company v. Stroock & Stroock & Lavan LLP,* 277 F. Supp. 2d 245 (S.D.N.Y. 2003), is inapposite. First, the case addresses coverage for underlying civil matters, not the impact of a

criminal conviction or criminal judgment "in fact" on an exclusion, or even the impact of a jury's verdict. More fundamentally, that case focuses on the "knowingly wrongful" language of the exclusion at issue, rather than the "in fact" proposition for which Illinois National cites it. *Id.* at 252 (interpreting exclusion to apply to those causes of action "for which actual knowledge of wrongdoing is an essential element"). That case also involved the interpretation of the duty to defend, not the duty to advance defense costs, which is at issue here. The two other cases Illinois National cites for this proposition – neither of which apply New York law – are also distinguishable. *National Union Fire Insurance Company of Pittsburgh, Pa. v. Continental Illinois Corp.,* 666 F.Supp. 1180 (N.D. Ill. 1987), dealt with the application of a "wrongful act" exclusion to settled claims and claims that were still pending, not the impact of a jury's verdict. And, in any event, it denied the insurer's request to apply the exclusion. *Id.* at 1198. *American Casualty Company v. United Southern Bank,* 950 F.2d 250 (5th Cir. 1992), similarly only holds that the summary judgment record before the court did not support the trial court's conclusion that the exclusion did not apply, but it does not address the impact of a criminal conviction or judgment.

Alternatively, if Illinois National's reliance on the jury verdict is viewed as a legal argument based on the non-mutual preclusive effect of the conviction, it still has not shown why it is entitled to have the Bankruptcy Court's injunction overturned. Illinois National cites no controlling authority applying non-mutual issue preclusion to deny insurance coverage on the basis of an unreviewed criminal jury verdict (as opposed to a guilty plea), and we are aware of none. A jury verdict remains subject to review, including the Court of Appeals, and cannot be used conclusively to establish the factual basis of an insurance policy exclusion. Even if the rule were otherwise, a further reason to construe Illinois National's contract as providing for the

advancement of defense costs through appeal is that denying defense costs on appeal would be inconsistent with the rule that a conviction that has been reversed on appeal has no issue preclusive or collateral estoppel effect. *See, e.g.,* Restatement (Second) of Judgments § 27, comment o. (Westlaw 2008) (explaining that if a judgment is reversed on appeal, the appellate judgment is conclusive between the parties); Restatement (Second) of Judgments § 16 (Westlaw 2008); *Butler v. Eaton*, 141 U.S. 240 (1891). Consequently, if Illinois National were to withhold defense costs on appeal on the basis of the unreviewed criminal conviction, and the conviction were overturned, the coverage decision would also have to be overturned. But Mr. Grant, in the meantime, would be irreparably injured by the withholding of funds necessary to pursue the appeal – a particular injustice where, as here, the policy requires advancement of the fees and costs of an appeal. If, on the other hand, the contract is construed to require payment through appeal, then the final judgment on appeal will conclusively resolve the coverage issues as well, and Illinois National would have its bargained-for remedy under the policy: to recoup fees and costs.

Finally, Illinois National fails to carry its burden to establish coverage because of two factual features of the dispute which we have touched upon above. First, Illinois National appears to assume that Mr. Grant's conviction is the "final disposition" under the policy of the criminal proceeding, even though no judgment in his case has been entered and his case will be the subject of an appeal. Second, Illinois National's own Policy contemplates coverage of appellate costs: it defines "Defense Costs" to include "reasonable and necessary fees, costs and expenses … from the investigation, adjustment, defense, and appeal of a Claim." (March 10, 2008 Schreiner Decl., Ex. A at Definition (e).) Illinois National has not even attempted to demonstrate how these two different parts of its Policy can be read together, as it must do to

-15-

meet its burden.  Accordingly, Illinois National's argument – heard for the first time in this appeal – does not come close to meeting its burden, either legally or factually.

## CONCLUSION

For the reasons set forth above, Illinois National's appeal from the Bankruptcy Court's order granting a preliminary injunction should be denied.

Dated:  July 17, 2008

Respectfully submitted,

s/ Norman L. Eisen
Norman L. Eisen (admitted *pro hac vice*)
Laura E. Neish (LN-0040)

ZUCKERMAN SPAEDER LLP
1540 Broadway, Suite 1604
New York, New York 10036
Phone: (212) 704-9600

- and -

Michael T. Hannafan
Blake T. Hannafan
HANNAFAN & HANNAFAN, LTD.
One East Wacker Drive, Suite 2800
Chicago, IL  60601
Telephone: (312) 527-0055
Facsimile: (312) 527-0220

*Attorneys for Plaintiff-Appellee Tone N. Grant*