Kevin J. Windels (KJW-5477)
Stephen F. Willig (SFW-9847)
D'AMATO & LYNCH, LLP
70 Pine Street
New York, New York 10270
Phone: (212) 269-0927
Facsimile: (212) 269-3559
kwindels@damato-lynch.com
swillig@damato-lynch.com

*Attorneys for Defendant/Appellant*
ILLINOIS NATIONAL
INSURANCE COMPANY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x
                                    :   Chapter 11
In re                               :   Case No. 05-60006 (RDD)
                                    :   (Jointly Administered)
REFCO. INC. et al.,                 :
                                    :
                   Debtors.         :
                                    :
                                    :
-------------------------------------------------------x
                                    :   Adv. Proc. No. 08-1129-rdd
TONE N. GRANT,                      :
                                    :
                   Plaintiff/Appellee, :
                                    :   Civil Action No. 08-CV-04252 (GEL)
        -against-                   :
                                    :
ILLINOIS NATIONAL INSURANCE         :
COMPANY AND NATIONAL UNION FIRE     :
INSURANCE COMPANY OF PITTSBURGH,    :
PA.,                                :
                                    :
                   Defendant/Appellant. :
                                    :
-------------------------------------------------------x

**DEFENDANT/APPELLANT ILLINOIS NATIONAL INSURANCE COMPANY'S
REPLY BRIEF IN FURTHER SUPPORT OF ITS APPEAL OF THE BANKRUPTCY
COURT'S ORDER GRANTING PLAINTIFF A PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES...............................................................................ii

PRELIMINARY STATEMENT ........................................................................1

STATEMENT OF FACTS.................................................................................3

ARGUMENT

POINT I
THE COURT BELOW ERRED IN GRANTING THE PRELIMINARY
INJUNCTION BECAUSE GRANT DID NOT ESTABLISH COVERAGE,
AND THERE IS NO DUTY TO ADVANCE DEFENSE COSTS ...........................................9

    A.  Plaintiff Failed to Establish Coverage...............................................................9

    B.  The Bankruptcy Court Misinterpreted the "Arising Therefrom"
        Language in the Application......................................................................10

    C.  The Bankruptcy Court Failed to Consider all of Bennett's
        Admissions.............................................................................................11

    D.  New York Courts Have Recognized that Insureds are Not Entitled
        to Defense Costs When There is no Coverage, Even if the Insured
        Contends Otherwise..............................................................................13

    E.  Grant's Reliance on This Court's Decision on the Appeal in the
        Axis Case is Misplaced..........................................................................15

    F.  Illinois National Is Entitled to Recoupment Under The Policy....................18

POINT II
THE COURT BELOW ERRED IN GRANTING EXTRAORDINARY
RELIEF, AS THE REQUIREMENTS NECESSARY FOR A PRELIMINARY
INJUNCTION AGAINST ILLINOIS NATIONAL WERE NOT MET ...............................18

POINT III
THE CRIMINAL, FRAUDULENT AND DISHONEST ACTS EXCLUSION
IS APPLICABLE .........................................................................................23

CONCLUSION .............................................................................................25

# TABLE OF AUTHORITIES

## FEDERAL CASES

2575 Owners Corp. v. Federal Insurance Co.,
    1998 WL 846123 (S.D.N.Y. 1998) ................................................................17

In Re Adelphia Communications Corp.,
    2004 WL 2186582 (S.D.N.Y. 2004) ...........................................................19

In Re Adelphia Communication Corp.,
    323 B.R. 345 (Bankr. S.D.N.Y. 2005) ........................................................21

In Re Allied Digital Technologies Corp.,
    306 B.R. 505 (Bankr. D. Del. 2004) ..........................................................22

Axis Reinsurance Company v. Phillip R. Bennett,
    2008 WL 2600034 (S.D.N.Y.) .........................................................15, 16, 17

Cement and Concrete Workers District Council Pension Fund
    v. Ullico Casualty Co.,
    387 F. Supp. 2d 175 (E.D.N.Y. 2005).............................................14, 20, 21

Coregis Insurance Co. v. Lewis Johns,
    2006 WL 2135782 (E.D.N.Y. 2006) ...........................................................17

Coregis Insurance Co. v. Lyford,
    21 F. Supp. 2d 695 (S.D. Tex. 1998) .........................................................18

Great American Insurance Company v. Gross,
    2005 WL 1048752 (E.D. Va.) ....................................................................10

McCauley Enterprises, Inc. v. New Hampshire Insurance Co.,
    716 F. Supp. 718 (D.Conn. 1989) ..............................................................17

Medical Society of N.Y. v. Toia,
    560 F.2d 535 (2d Cir. 1977)........................................................................19

SEC v. Freeman,
    290 F. Supp. 2d 401 (S.D.N.Y. 2003).........................................................24

United States v. Pudell,
    572 F.2d 31 (2nd Cir. 1978)........................................................................24

In re WorldCom, Inc. Sec. Litigation,
    354 F. Supp.2d 455 (S.D.N.Y. 2005).........................................................17, 20, 21

## STATE CASES

American International Specialty Lines Insurance Co.
    v. Towers Financial Corp.,
    No. 94 Civ. 2727, 1997 WL 906427 (S.D.N.Y. September 12, 1997) .................17

Consolidated Edison v. Allstate,
    98 N.Y.2d 208 (2002) ......................................................................................9

Continental Casualty Co. v. Rapid-American Corp.,
    80 N.Y.2d 640 (N.Y. 1993)...........................................................................16

Federal Ins. Co. v. Tyco,
    Index No. 600507/03 Supreme Court of the State of
    New York, NY Cty., August 10, 2006 ................................................................24

Federal Ins. v. Kozlowski, et al.,
    18 A.D.3d 33 (1st Dep't 2005).......................................13, 14, 15, 18, 23

Federal Insurance Co. v. Kozlowski,
    2004 WL 583829 (N.Y. Sup. Ct. March 5, 2004).................................17

Fireman's Fund Insurance Company v. Sleigh,
    267 Va. 768 (2004)........................................................................................11

Maroney v. New York Central Fire Ins. Co.,
    5 N.Y.3d 467 (2008) .....................................................................................10

Metro Heat & Power v. AIG Claims,
    47 A.D.3d 621 (2nd Dep't 2008).....................................................................9

National Union Fire Insurance Co. of Pittsburgh, Pa.
    v. Ambassador Group,
    157 A.D.2d 293 (1st Dep't 1990) ...............................................................9, 15

People v. Kozlowski,
    47 A.D.3d 111 (1st Dep't 2007)...................................................................24

State Farm Fire & Casualty Co. v. Wolford,
    498 N.Y.S.2d 631 (4th Dep't 1986).................................................................18

U.S. Fire Insurance Co. of Pittsburgh, Pa. v. New York Marine
 and General Insurance Co.,
  268 A.D.2d 19, 706 N.Y.S.2d 377 (1st Dep't 2000) .............................................11

Villa  Charlotte Bronte, Inc. v. Commercial Union Insurance Co.,
  64 N.Y.2d 846, 476 N.E.2d 640 (1985) ...............................................................14

## DOCKETED CASES

Kirschner v. Agoglia, et al.,
  No. 07-3060 (rdd)(S.D.N.Y. Bankr.) .......................................................................7

Kirschner v. Grant Thornton LLP, et al.,
  No. 07 CV 5306 (N.D. Ill.) ......................................................................................7

In Re Refco Capital Markets Ltd. Brokerage Customer Securities
  Litigation, No. 06 Civ. 643 (GEL)...........................................................................7

Thomas H. Lee Equity Fund V, L.P., et al. v. Phillip Bennett, et al.,
  No. 05 Civ. 9608 (GEL)...........................................................................................7

United States of America v. Phillip Bennett,
  S-3 05 CR 1192-01 (NRB)........................................................................................7

United States of America v. Tone N. Grant,
  S4 05 CR 1192 (NRB) ............................................................................................22

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
                             :  Chapter 11

In re                       :  Case No. 05-60006 (RDD)
                             :  (Jointly Administered)

REFCO. INC. et al.,          :

               Debtors.      :

-----------------------------------------------------------x
                             :  Adv. Proc. No. 08-1129-rdd

TONE N. GRANT,          :

              Plaintiff/Appellee,  :

                             :  Civil Action No. 08-CV-04252 (GEL)

         -against-           :

ILLINOIS NATIONAL INSURANCE  :
COMPANY AND NATIONAL UNION FIRE  :
INSURANCE COMPANY OF PITTSBURGH,  :
PA.,                           :

             Defendant/Appellant.  :

-----------------------------------------------------------x

## PRELIMINARY STATEMENT

Grant's opposing brief fails to meet head on the central point of this appeal: a) the Bankruptcy Court misconstrued the facts, in particular the scope and impact of Refco CEO Philip Bennett's plea of guilty to the 20 count indictment; and b) misconstrued the law, both the established law relieving Illinois National of responsibility for advancing defense costs when there is no coverage, and also the requirements to be met for issuance of a preliminary injunction. Instead, Grant asserts entitlement indefinitely to Policy proceeds based upon an unrealistic, and unsupported, narrow interpretation of the phrase "arising

therefrom" in the Application, and tries to draw sympathy from the Court, despite his own criminal conviction.

The Bankruptcy Court's rationale for granting plaintiff the extraordinary relief of an injunction in the face of Illinois National's prior knowledge exclusion defense was that "Mr. Bennett . . . pled guilty to every count of the indictment, however, he did not acknowledge the accuracy of every allegation in the indictment." (Windels App. Dec., Ex. M, p. 45: 5-7). However, simply put Bennett did not have to admit to every allegation for the exclusion to apply (although Illinois National does not concede that an unconditional plea of guilty to every count of a 20 count indictment does not serve as an admission to each of the factual elements that underlie the charges). The Court failed to consider the import of the factual admissions Bennett unquestionably did make at his plea allocution. If the Bankruptcy Court had considered these specific admissions, it would have found that the S-3 Indictment, the S-4 Indictment and the Civil Actions are all actions brought against Grant that arose out of the same schemes and set of facts that were specifically admitted by Bennett to be criminal and fraudulent (and, consequently, not disclosed in the Application although known by Bennett and Refco at the time). The fact that at his own criminal trial Grant was also found guilty of all of the crimes alleged against him in the S-4 Indictment only serves to confirm the above and also gives rise to a finding of no coverage under the Policy's criminal, fraudulent and dishonest acts exclusion contained in Clause 4(c). As a result, Illinois National is entitled not only to a reversal of the Bankruptcy Court's Order, but also to a determination of no coverage and to recoupment of the defense costs it has already paid out to Grant under the Policy.

2

**STATEMENT OF FACTS**

Grant's opposition does not refute with any factual detail the conclusion that the S-3 Indictment, the S-4 Indictment and the Civil Actions all "arise" out of the same criminal activities, misrepresentations, and omissions not disclosed by Refco and Bennett in the responses to Questions 9(a) and (b) in the Application. Instead, the opposition relies entirely on the conclusory findings of the Bankruptcy Court. The Application's prior knowledge exclusion specifically excludes from coverage any "claim[s] or action[s] arising therefrom" (referring to "any [undisclosed] act, error or omission" which a Refco "Director or Officer" or "[t]he Applicant [or] any of its Subsidiaries ha[d] knowledge or information of," which might give rise to a claim). There is no doubt that Bennett's plea testimony, and now his Criminal Judgment, establish that both Bennett and Refco had such prior knowledge which was not disclosed to Illinois National. Grant's own conviction is further proof of the knowledge of Refco and its Directors and Officers of such acts, errors and omissions.

The 20-count S-3 Indictment to which Bennett pled guilty alleged, in part:

(1)     From at least as early as in or about the mid 1990s up to and including 2005 (including the period in which Grant was President of Refco from 1997-98) and Refco Group Holdings, Inc., through various means, Bennett <u>together with Grant</u> and others at Refco, Inc., including certain wire transfers, wire communications, and securities and regulatory filings, conspired to hide from, among others, Refco's auditors, customers and investors, losses sustained by Refco through its own and its customers' trading in the financial markets in order to sell the company for their own benefit and that of Refco's owners and senior management. <u>See</u> Windels App. Dec. Ex. G, Windels Aff. Ex. 1 at ¶¶ 3, 7, 10-18, 21, 22, 25, 33, 41.

(2)     In furtherance of this scheme, Bennett, <u>Grant</u> and others conspired and caused Refco to file on its behalf false and fraudulent statements to Refco's banks, counterparties, customers, auditors and investors, and to create false audited

3

financial statements and false public filings with the SEC. Id.,
¶¶7-18, 20-28, 30-55.

(3)    In furtherance of this scheme, Bennett, Grant and others
at Refco engaged in a series of transactions to transfer losses
from Refco to a company controlled by Bennett, directed a
repeated series of transactions designed to conceal those losses
at year- and quarter-end from Refco's auditors and others, and
caused Refco to make false and fraudulent public filings with
the SEC. This fraudulent scheme (begun at least as early as in
or about the mid 1990's) culminated in the August 2005 initial
public offering of stock ("IPO") in Refco in which the pubic
purchased approximately $583 million of Refco common stock
based on a false and fraudulent registration statement. Id., ¶¶ 7-
9. See also Id., ¶¶ 10-18, 22-26, 30-55.

(4)    After the fraudulent scheme was uncovered in October
2005, Refco filed for bankruptcy and was subsequently de-listed
by the New York Stock Exchange. Id., ¶¶ 56-59.

Based on these allegations and others, the S-3 Indictment accused Bennett of

committing 20 crimes in violation of federal law: (1) conspiracy to commit securities fraud,

wire fraud, bank fraud, money laundering, and to make false filings to the SEC; (2) securities

fraud; (3) false filings with the SEC; (4) wire fraud; (5) material misstatements to auditors;

and (6) bank fraud, and (7) money laundering. The S-3 Indictment pled the same charges

against Grant, except for: (3) making false filings with the SEC and (5) material

misstatements to auditors. Following Bennett's guilty plea, the S-4 Indictment (Windels

App. Dec., Ex. P) alleged the same charges against Grant as those alleged against him in S-3.

Grant was found guilty on all counts (Windels App. Dec., Ex. Q, pp. 3095:12-3097:8).

**Bennett's Prior Knowledge and Admissions**

The Bankruptcy Court's finding that the criminal acts to which Bennett pled

guilty did not necessarily implicate the application exclusion against Grant, based on the

purported absence of specific factual admissions by Bennett, is not correct. The factual

4

admissions made by Bennett, under oath, at his plea allocution on February 15, 2008 by themselves should have led to the denial of plaintiff's preliminary injunction motion.   The Court failed to consider that in addition to pleading guilty to each and every count of the S-3 Indictment, Bennett admitted to the following:

> Your Honor, during the period that I served as CEO of Refco, I agreed with other Refco executives to enter into a series of transactions at the end of Refco's financial reporting periods to make it appear as if a receivable due to Refco from… a related party, was instead due from an independent third-party customer.
>
> The [hidden] receivable was composed of, among other things, historical customer losses, bad debts, and expenses that [another Refco entity] had incurred on behalf of Refco.
>
> I, along with other Refco executives, have caused Refco to enter into these transactions in order to conceal the size and nature of the [hidden] receivable.  We concealed the receivable from, amongst other, Refco's auditors…various lenders…and also investors in Refco's common stock.
>
> The [hidden] receivable and related party transaction used to conceal it were material information that Refco investors and lenders would have wanted to have known prior to investing in or lending money to Refco.  While I believe that I would be able to pay the [hidden] receivable down over time, and did, in fact, ultimately pay off the receivable balance in its entirety, I knew that failing to disclose the receivable was wrong; I knew that obtaining funds from Refco's investors and lenders based on misleading financial statements was also wrong.
>
> I also caused Refco to file documents with the SEC, namely S1, S4, and 10-K that did not disclose the full extent of the [hidden] receivable or the transactions used to conceal it; and, thus, were false and misleading with respect to material facts.  I knew that failing to disclose these facts in public filings and in connection with Refco's sale and registration of Refco's notes and common stock was wrong, and I deeply regret having done so.

See Windels App. Dec. Ex. G, Windels Aff, Ex. 2, pp. 17:5-19:3.

Bennett also specifically admitted that he committed each of the "various wire transfers and wire communications, as well as certain [securities and regulatory] filings in the [S-3] indictment…on or about the dates set forth in the [S-3] indictment." (Id. at pp. 19:22-20:3). A review of the Conspiracy and other charges in the S-3 Indictment and the S-4 Indictment, as set forth in the below chart, shows that Bennett and Grant were complicit in all of the Counts in S-3 and S-4 alleging criminal activities against Grant during the brief time period when Grant was an officer of Refco (from 1997-1998) and thereafter, and each of the counts charged were based on the wire transfers, wire communications and/or securities and regulatory filings admitted to by Bennett, who was CEO of Refco at all times until 2005 (Windels App. Dec. Ex. G, Windels Aff. Ex. 1, ¶¶ 2-4).

| Criminal Charges against Tone N. Grant | S-3 Indictment | S-4 Indictment |
|---|---|---|
| Conspiracy to Commit Securities Fraud, Wire Fraud, to Make False Filings with the SEC, to Make Material Misstatements to Auditors, Bank Fraud and Money Laundering[1] | Count 1, ¶¶1-69 | Count 1, ¶¶1-60 |
| Securities Fraud | Count 2, ¶¶70-71 | Count 2, ¶¶61-62 |
| Wire Fraud | Count 11, ¶¶78-79 | Count 3, ¶¶63-64 |
| Bank Fraud | Count 15, ¶¶82-83 | Count 4, ¶¶65-66 |
| Money Laundering | Counts 19, ¶¶84-85 | Count 5, ¶¶67-68 |

For purposes of the Court's analysis, it is important to consider: (1) under the Policy Grant is not eligible for coverage after he ceased being an officer in 1998, and (2) that all of the criminal activities in which Grant is alleged to have participated also involved Bennett as either a co-conspirator or co-participant and involved a wire transfer, wire communication or a filing with a securities or regulatory authority, to which Bennett admitted. Thus, all of the charges against Grant in the S-3 and S-4 Indictments "arise out of"

---

[1] With respect to Count 1, the charges of Conspiracy to Make False Filings with the SEC and to Make Material Misstatements to Auditors, are only alleged against Bennett in the S-3 Indictment.

Bennett's admitted criminal activities described herein.  On July 3, 2008, Bennett was

sentenced to sixteen years in prison as a result of his conviction for his crimes.[2]

    Similarly, all of the allegations and claims against Grant in the Civil Actions[3]

arise out of Bennett's criminal activities as well, as set forth in the below chart:

| Civil Actions Against Grant | Allegations and Claims Against Grant Arising Out of Bennett's Criminal Activities |
|---|---|
| In Re Refco Securities Litigation No. 05 CV. 8626 (GEL) (S.D.N.Y.) | Second Amended Consolidated Class Action Complaint ¶¶1, 3-7, 9-10, 12, (Count 2, ¶¶336-347, Count 5, ¶¶376-388, Count 8, ¶¶414-587, Count 12, ¶¶774-786) |
| In Re Refco Capital Markets Ltd. Brokerage Customer Securities Litigation, No. 06 Civ. 643 (GEL) (S.D.N.Y.) | Complaint ¶¶2-5, 7, 25, 28-29, 49, 51, 72-73, 105-110, 109, 162-176 (Count I ¶¶365-372, Count II ¶¶ 373-378 and Count III ¶¶ 379-382) |
| VR Global Partners, L.P. v. Bennett, et al., No. 07 CV 8686 (GEL) (S.D.N.Y.) | Complaint ¶¶2-19, 23, 30-35, 61, 62, 111-243, 247-285, (Count I ¶¶540-542, 544-545, 547-549, Count II ¶¶550-555 and Count III ¶¶556-559) |
| Kirschner v. Grant Thornton LLP, et al., No. 07 CV 5306 (N.D. Ill.) transferred to S.D.N.Y. 07 CV 11604 (GEL) | Complaint ¶¶ 1-13, 36, 39, 59-100, 106 (Seventeenth Claim for Relief ¶¶453-460) |
| Thomas H. Lee Equity Fund V, L.P., et al. v. Phillip Bennett, et al., No. 05 Civ. 9608 (GEL) S.D.N.Y. | Complaint ¶¶1-9, 15, 16, 30-45, 48-51 (Fourth Claim for Relief ¶¶70-79) |
| Kirschner v. Agoglia, et al., No. 07-3060 (rdd)(S.D.N.Y. Bankr.) | Complaint ¶¶1-7, 25, 37, 56-113, 164-170, (Count III ¶¶243-258, Count X ¶¶328-332, Count XI ¶¶333-337) |

---

[2] See, United States of America v. Phillip Bennett, S-3 05 Cr. 1192-01 (NRB) Judgment in a Criminal Case (ECF No. 165).

[3] While there is no doubt that Plaintiff did not submit any of the Civil Actions to the Bankruptcy Court, almost all of these cases are pending before this Court, with the exception of Kirschner v. Agoglia, et al., 07-3060 (Bankr. S.D.N.Y.). Each of the causes of actions contained therein alleged against Grant arise from the criminal activities, misrepresentations, and omissions of Bennett described above (detailed in the S-3 Indictment).  Should the Court require copies of the Civil Actions described in the Complaint (at ¶ 13), Illinois National would be willing to stipulate to their inclusion in the Record on Appeal before the Court.

It is irrefutable that the Criminal Action against Grant (described in both the S-3 and S-4 Indictments) and the Civil Actions against Grant (as well as Refco, Bennett and others) all arose out of or are attributable to the very same schemes and fraud for which Bennett was indicted and convicted and which he and Refco failed to disclose to Illinois National.[4] The S-4 Indictment pled the exact same crimes against Grant as did the S-3 Indictment, and plaintiff specifically admitted as much in his opposition brief (at footnote 3 on p. 7). There are no material differences in the factual allegations in the charges against Grant in the S-4 Indictment from those in S-3, and plaintiff does not contend otherwise, because the criminal conspiracy between Bennett and Grant is the same and is at the root of both (compare Count I of S-3 Indictment ¶¶ 1-69 to Count I of the S-4 Indictment ¶¶ 1-60). The criminal conspiracy was the platform from which Bennett and Grant and others operated. There can be no doubt that the S-3 Indictment, as it relates to Grant, and S-4 Indictment and the Civil Actions, as they relate to Grant, "arose" from this conspiracy.

Furthermore, Bennett admitted in his plea allocution that he knew about (and participated in) these fraudulent and criminal acts involving hundreds of millions of dollars for approximately seven years prior to the inception of the Policy (Compare, Windels App. Dec. Ex. G, Windels Ex. 2 at pp. 17:5-19:3 with Id. Ex. 1 at ¶¶ 17-18, 22-26). Consequently, Bennett's and Refco's responses to questions 9(a) and (b) were patently false; they were acutely aware of acts, errors and omissions that would most certainly lead to claims. Thus, the Application excludes coverage for "any claim or action arising therefrom." Grant's own

---

[4] The Civil Actions, as they apply to Grant, also arise out of the criminal charges against Grant in the S-4 Indictment, on which he was ultimately found guilty of all counts, thus giving rise to the application of the criminal acts and fraud exclusion (Clause 4(c)) (See Point III below). In addition to 4(c), other exclusions may in the future be relied upon which are not before the Court on this appeal (e.g., the public offering exclusion in Clause 4(j)).

criminal conviction further supports the conclusion that Refco and its Directors and Officers

were aware of such acts, errors or omissions.

<u>**ARGUMENT**</u>

**POINT I**

**THE COURT BELOW ERRED IN GRANTING THE
PRELIMINARY INJUNCTION BECAUSE GRANT DID
NOT ESTABLISH COVERAGE, AND THERE IS
<u>NO DUTY TO ADVANCE DEFENSE COSTS</u>**

**A.    <u>Plaintiff Failed to Establish Coverage</u>**

Grant's opposition makes no attempt to explain his failure to put before the

Bankruptcy Court the S-4 Indictment or the complaints in any of the Civil Actions referenced

in his Complaint and for which he seeks coverage.  There is no question that under New

York law, it is the insured, not the insurer, who has the burden of establishing coverage

under an insurance policy.  See, <u>Metro Heat & Power v. AIG Claims</u>, 47 A.D.3d 621, 622

(2d Dep't 2008) ("Generally, it is for the insured to establish coverage and for the insurer to

prove that an exclusion in the policy applies to defeat coverage." quoting <u>Consolidated</u>

<u>Edison v. Allstate</u>, 98 N.Y.2d 208, 218 (2002)).  Moreover, an insurer can be compelled to

advance defense costs only when there is some colorable claim to coverage under the policy.

See, <u>National Union Fire Insurance Co. of Pittsburgh, Pa. v. Ambassador Group</u>, 157 A.D.2d

293, 299 (1st Dep't 1990), leave to appeal denied 77 N.Y.2d 873 (1991), ("such advances on

expenses, even if called for by the policy herein, would be subject to apportionment between

covered and noncovered claims and parties (citations omitted)").  Therefore, the Bankruptcy

Court's finding that the Civil Actions and the S-4 Indictment presented claims that had to be

defended at the cost of Illinois National is unsupported by the record.

9

**B.      The Bankruptcy Court Misinterpreted the "Arising
         Therefrom" Language in the Application**

Plaintiff's opposition does little to rebut the argument contained in Illinois

National's original brief in support of its appeal that the terms "arising therefrom" (contained

in the prior knowledge exclusion in the application) and "arising out of" (contained in the

Policy's criminal, fraudulent and dishonest acts exclusion, at Clause 4(c)) should be read

broadly, consistent with a long line of New York cases on this point (See, Illinois National

App. Br. at pp. 16-20).  Instead, plaintiff argues, without support, that the Bankruptcy Court

correctly relied on Great American Insurance Company v. Gross, 2005 WL 1048752 (E.D.

Va.), in which the Court applied Virginia law, and that the cases cited by Illinois National

use essentially the same standard and support the Bankruptcy Court's use of the Great

American case.

Contrary to plaintiff's assertion, the Great American case concerns different

policy language, namely "as contributed to or brought about," Id. at *6, and does not concern

or discuss the "arising out of" standard in the New York line of cases cited to by Illinois

National in its main brief (at pp. 16-20).  Thus, the applicable standard here "requires only

that there be some causal relationship between the injury and the risk for which coverage is

provided." Maroney v. New York Central Fire Ins. Co., 5 N.Y.3d 467, 472, 805 N.Y.S.2d

533, 536 (2005) (emphasis added) (holding that the exclusion of injury "arising out of" use

of premises barred coverage for injury by a horse's kick on premises since the injury was

related to the purposes for which the premises were used, i.e. boarding horses).  See also,

U.S. Fire Ins. Co. of Pittsburgh, Pa. V. New York Marine and General Ins. Co., 268 A.D.2d

19, 21-22, 706 N.Y.S.2d 377, 378-79 (1st Dep't 2000).  Moreover, the Virginia Supreme

Court, in <u>Fireman's Fund Insurance Company v. Sleigh</u>, 267 Va. 768, 772 (2004), in

applying "arising out of" language in an insurance contract held that:

> where the injury arises out of the employment of the uninsured
> vehicle in the manner for which it was designed and as
> reasonably contemplated by the parties to the insurance contract,
> coverage exists under such policies where there is a causal
> relationship between such use and injury sustained by the
> insured, regardless of the intent of the uninsured motorist.
> (citation omitted).

The Court did not equate "arising out of" with "as contributed to or brought about by." In

any event, even under the higher standard used by the Court in <u>Great American</u> applicable to

the "as contributed or brought about" language, the prior knowledge exclusion in the

application and in Exclusion 4(c) would still exclude coverage (See Point III herein with

regard to Exclusion 4(c)).

C.    **The Bankruptcy Court Failed to Consider
       All of Bennett's Admissions**

The Bankruptcy Court failed to consider the extent to which the actions

against Grant "arise" from the criminal activities of Bennett and Refco that were not

disclosed on the Application (see pp. 4-8, supra). Put simply, the record supports the

conclusion that all of the actions against Grant "arise" from the criminal activities,

misrepresentations and omissions not disclosed by Bennett and Refco on the Application.

There is no question that the activities which Bennett described and admitted to at his plea

hearing also included Grant during this tenure as President of Refco from 1997 to 1998 and

beyond that (through 2005) and have "some causal relationship" to the actions against him.

For purposes of the Application's prior knowledge exclusion, there was never a requirement

that Grant actually be found guilty of any of the crimes (either by "final adjudication" or "in

fact"), but only that the "actions or claims" against Grant "arise therefrom" (meaning from the criminal activities, misrepresentations and omissions not disclosed by Bennett and Refco on the Application). The fact that Grant also participated and was convicted, of course, only adds weight to Illinois National's argument that Refco and its Directors and Officers knew of such activities, misrepresentations and omissions.

Among other things, Bennett specifically admitted at his plea to each of the crimes in the S-3 Indictment <u>and</u> made factual admissions of the acts underlying the crimes, including that he made each and every one of the "various wire transfers and wire communications, as well as certain filings in the indictment… [which] occurred on or about the dates set forth in the indictment." (Windels App. Dec., Ex. G, Windels Aff. Ex. 2 pp. 19:22-20:3). The S-3 Indictment details, in paragraphs 3 through 85, the schemes involving Bennett, Grant, Trosten and others at Refco during the period of at least 1997 to 2005. Since Bennett admitted to each and every one of these acts in the S-3 Indictment (including all of the "wire transfers and wire communications as well as certain [securities and regulatory] filings" in the S-3 Indictment), and each and every count against Grant in both Indictments arose out of those undisclosed criminal acts, misrepresentations or omissions, under the Application's prior knowledge exclusion there is no coverage for Grant for the S-3 Indictment, the S-4 Indictment or the Civil Actions.

**D.    New York Courts Have Recognized that Insureds are Not Entitled to Defense Costs When There is no Coverage, Even if the Insured Contends Otherwise**

Illinois National's main brief cites at length (at pp. 23-24) to the long line of New York cases which hold that where a policy does not provide coverage for an alleged loss, there is no obligation to advance defense costs. This is exactly the situation presented

12

in this case; there is no coverage for the "action[s]" against Grant pursuant to the prior

knowledge exclusion in the application and Exclusion 4(c).[5]  Grant tries to overcome these

cases by arguing (at pp. 8-9 of the opposing brief) that Illinois National is obligated to

advance defense costs until there is a final disposition or adjudication of all claims against

him.  This is not what the New York courts have held and is not what the Policy provides.

The Application's prior knowledge exclusion and, in the alternative, the fraud exclusion, are

fully dispositive of all of the coverage issues in any event.  New York courts have

consistently adhered to the logically inescapable concept that when there is no coverage,

there is no duty to advance defense costs.  Put simply, an insurer is obligated to advance

under a contract of insurance "only those costs relating to liabilities that fall under the

coverage provided, i.e., defense costs for the covered claims."  <u>Federal Ins. v. Kozlowski, et</u>

<u>al.</u>, 18 A.D.3d 33, 38 (1st Dep't 2005).

> The First Department, in <u>Kozlowski</u>, also found that:
>
>> while Federal must pay defense costs as they are incurred in the
>> [Criminal Action], its ultimate liability for such costs is only
>> with respect to such liabilities as fall under the coverage
>> provided.  To the extent such liabilities are excluded from
>> coverage by the [Personal Profit Exclusion], Federal is not
>> required to pay for defense costs.  Since this allocation cannot
>> be made at this juncture, . . . Federal must pay all defense costs
>> as incurred, subject to recoupment when Kozlowski's liabilities,
>> if any, are determined.

<u>Id.</u> at 42.  <u>See also</u>, <u>Cement and Concrete Workers Dist. Council Pension Fund v. Ullico Cas.</u>

<u>Co.</u>, 387 F.Supp.2d 175, 190-91 (E.D.N.Y. 2005) (insurer not obligated to advance defense

costs where it is clear that an insured's claims are not covered under the policy); <u>Villa</u>

---

[5] Illinois National has reserved its rights and will assert at the appropriate time additional coverage defenses.  See,
e.g. footnote 6, at pp. 24-25 of Illinois National's main brief.

Charlotte Bronte, Inc. v. Commercial Union Ins. Co., 64 N.Y.2d 846, 848, 476 N.E.2d 640

(1985) (to the same effect).

There is also no coverage for Grant because of the criminal acts exclusion (at ¶

4(c) of the Policy). As made clear in Illinois National's main brief, the Policy has no "final

adjudication" language applicable to either the Application's prior knowledge exclusion or

the criminal acts exclusion. Moreover, the "in fact" language in paragraph 4(c) has

repeatedly been applied by courts to exclude coverage (See pp. 20-22 of Illinois National's

main brief). In addition, Judge Drain recognized at the hearing that, in the context of the

prior knowledge exclusion in the Application, plaintiff does not have absolute entitlement to

advancement of defense costs when there is no possible coverage for the claims and actions.

During argument of the motion, the Court considered the relevance of particular findings as

to Grant's guilt, "if [Bennett] had said [at his plea allocution], I did all this with Grant, then I

think, you know, subject to all the other points I raised earlier about whether a guilty plea

could be considered as extrinsic evidence, I think [Illinois National] win[s]." (Windels

App.Dec. Ex. M., p. 32). The issue of coverage is ripe for determination now, and should be

determined in Illinois National's favor for the reasons stated above.

The criminal plea and admissions by Bennett and the conviction of Grant

conclusively establish that none of the actions against plaintiff are covered under the Policy.

There is no need for the Court to delay that determination and require advancement of

defense costs in the meantime. Based on the false responses given to questions 9(a) and (b)

in the Application, and the related exclusionary language that effectively acts as a prior

knowledge and acts exclusion, the Court should find that Illinois National has no obligation

to advance defense costs for "any claim[s] or action[s] arising therefrom."

14

**E.    Grant's Reliance on This Court's Decision on**
**the Appeal in the Axis Case is Misplaced**

Grant relies (at p. 8 of his brief) on this Court's June 26, 2008, holding in <u>Axis</u>

<u>Reinsurance Company v. Phillip R. Bennett</u>, 2008 WL 2600034 (S.D.N.Y.), for the

proposition that there must first be a "final adjudication" as to coverage before an insurer

may decline to advance defense costs. However, simply because an insured submits a claim

does not mean an insurer must pay it without any scrutiny and without making a

determination as to whether it falls within the coverage or is plainly excluded. As held in

<u>Federal Insurance Co. v. Kozlowski</u>, 18 A.D.3d at 41-42:

> [t]he obligation to pay defense expenses, on the other hand, is
> not as easily defined or applied. Under this type of defense
> coverage, the insurer is entitled to differentiate between covered
> and noncovered claims (*National Union Fire Ins. Co. of
> Pittsburgh, Pa. v. Ambassador Group*, 157 A.D.2d 293 [1990],
> *lv dismissed* 77 N.Y.2d 873 [1991]), despite the fact that a
> promise to pay defense costs has been construed to require
> contemporaneous payment.

Under Grant's reasoning, the insurer would always reimburse for defense costs and

indemnify first and try to recoup the funds advanced later. This is not what the Policy or the

case law provides, and Grant simply misses the point.

As the Court is well aware, the <u>Axis</u> case involved a situation where there was

a dispute over the "final adjudication" language in Condition (D)(2) of the primary policy

issued by U.S. Specialty and competing language in the Axis policy, and this Court held:

> The Court's recent Opinion and Order in <u>Axis Reinsurance
> Company v. Bennett</u> makes clear that whether Axis has an
> obligation to provide coverage to the Insureds in the Underlying
> Actions is very much in dispute. <u>See</u> 2008 WL 245388, at *8-
> 16. Indeed, the parties disagree not only as to whether the
> exclusions Axis relies upon to deny coverage were triggered,
> but also whether certain of the exclusions themselves are even

15

> part of the 2005-2006 Axis Policy.  See id.  Accordingly,
> because the governing insurance contract imposes a duty on
> Axis to pay for the defense of the Insureds, and because there is
> plainly a "reasonable possibility" that Axis will be required to
> indemnify the Insureds in some or all of the underlying tort and
> criminal proceedings, Continental Cas. Co. v. Rapid-American
> Corp., 80 N.Y.2d 640, 648 (N.Y. 1993), Axis clearly has a duty
> to pay the Insureds' defense costs in connection with the
> Underlying Actions.  (emphasis added)

Id. at *2.

Grant's case against Illinois National is materially different, since the record

before the Court establishes as a matter of law there is no coverage for the underlying

Criminal Action and Civil Actions.  This Court's subsequent finding in Axis that because

"Condition (D)(2) is susceptible to two reasonable interpretations, the Court concludes that

the provision is ambiguous," (Axis at *4) does not change the outcome to favor Grant in this

case because it has been established that there is no "reasonable possibility" that Illinois

National will be required to indemnify Grant and there is no basis to wait for a "final

adjudication" of the Criminal Action or the various Civil Actions.  This Court's holding in

Axis is in accord with the cases cited by Illinois National:

> In sum, if an insurer "wants the unilateral right to refuse a
> payment called for in the policy, the policy should clearly state
> that right." Rigas, 382 F.Supp.2d at 701.  The Axis Policy at
> issue here does not do so.  Accordingly, because the Underlying
> Actions could potentially give rise to an obligation to indemnity,
> Axis must advance defense costs to the Insureds in connection
> with those Actions, subject to repayment at some future time if
> it is "finally determined" by a court that they are not covered.
> (Gilbride Decl. Ex. I, at Condition (D)(2).)  (emphasis added).

Id. at *4.  The same holdings apply to the other cases cited by Grant.  In re WorldCom, Inc.

Sec. Litigation, 354 F.Supp.2d 455, 464 (S.D.N.Y. 2005) obligation to advance "exists

whenever a complaint alleges claims that may be covered under the insurer's policy."  Citing

16

Federal Insurance Co. v. Kozlowski, 2004 WL 583829 at *6 (N.Y. Sup. Ct. March 5, 2004),

aff'd in part 18 A.D.3d 33, 792 N.Y.S. 2d 397 (1st Dep't 2005)).

      It is well established that courts have repeatedly applied prior knowledge

exclusions in directors and officers liability and similar type policies to exclude coverage.

See, e.g., Coregis Ins. Co. v. Lewis Johns, 2006 WL 2135782, at **4, 10-12 (E.D.N.Y. 2006)

(enforcing policy language that excluded claims if "any insured" knew or could have

reasonably known of circumstances prior to the inception of the policy that might give rise to

a claim); McCauley Enterprises, Inc. v. New Hampshire Ins. Co. 716 F.Supp. 718, 721

(D.Conn. 1989) (where policy excluded coverage for loss of personal property occurring as a

result of any fraudulent, dishonest, or criminal act by "any insured," innocent insured cannot

recover).  See, also 2575 Owners Corp. v. Federal Ins. Co., 1998 WL 846123, at *2

(S.D.N.Y.) (excluding coverage for insureds' claims under a D&O policy where policy

language required "any individual" covered under the policy to disclose facts that gave the

insurer a reason to believe a future claim might arise).  American International Specialty

Lines Ins. Co. v. Towers Financial Corp. No. 94 Civ. 2727, 1997 WL 906427, at *1 n. 3, 9-

10 (S.D.N.Y. September 12, 1997) (interpreting "any claim" language to exclude coverage

for innocent co-insureds), State Farm Fire & Cas. Co. v. Wolford, 498 N.Y.S. 2d 631, 632

(4th Dep't 1986) (applying "any insured" exclusion to bar coverage for innocent insured).

The exclusion has been applied in light of admissions made by insureds. See, e.g., Coregis

Ins. Co., 2006 WL 2135782, at **10-12; Coregis Ins. Co. v. Lyford, 21 F.Supp.2d 695, 696-

97, 699-700 (S.D. Tex. 1998).

In this case, there is no legal or factual basis upon which Illinois National might ultimately be obligated to cover Grant under its Policy. Therefore, Illinois National is not obligated to advance defense costs as a matter of law.

**F.    Illinois National Is Entitled to Recoupment Under The Policy**

Pursuant to the Court's holding in Federal Ins. Co. v. Kozlowski, 18 A.D. 3d at 42, and Clause 8 of the Policy, Illinois National is entitled to recoup the defense costs it has paid in the event it is determined that Grant is not entitled to coverage under the terms and conditions of the Policy for the Criminal Action and the Civil Action. Clause 8 of the Policy provides in pertinent part that:

> such advanced payments by the Insurer shall be repaid to the Insurer by the Insureds or the Company, severally according to their respective interests, in the event and to the extent that the insureds or the Company shall not be entitled under the terms and conditions of this policy to payment of such loss.

Since Grant is not entitled to coverage under the Policy for any of the "action[s]" submitted, and the Court below improperly directed Illinois National to advance defense costs, Illinois National is entitled to recoupment of the defense costs of $455,099.62 it has paid to date. Illinois National is prepared to provide documentary support to establish this amount was paid.

## POINT II

### THE COURT BELOW ERRED IN GRANTING EXTRAORDINARY RELIEF, AS THE REQUIREMENTS NECESSARY FOR A PRELIMINARY INJUNCTION AGAINST ILLINOIS NATIONAL WERE NOT MET

Grant's opposition does not contest the fact that a preliminary injunction is an extraordinary and drastic remedy. See, e.g. Medical Soc. of N.Y. v. Toia, 560 F.2d 535, 538

18

(2d Cir. 1977). Nor does Illinois National, in this appeal, contest the general proposition that

such relief may be afforded with regard to advancing defense costs in certain circumstances.

In dispute is whether Grant's circumstances present a permissible and proper use for an

injunction.

        Grant's opposition contends the Court below did not abuse its discretion and

did not rely on a "clearly erroneous finding of fact or an error of law." (Grant brf., pp. 10-11,

quoting In Re Adelphia Communications Corp., 2004 WL 2186582 at *7 (S.D.N.Y. 2004)).

It is respectfully suggested, however, that Judge Drain below erred both on the facts and on

the law.

        On the facts, the Court found that the duty to pay defense costs, "exists

wherever a complaint against the insured alleges claims that may be covered under the

insurer's policy." (Windels App. Dec., Ex. M, pp. 40-41). The Complaint in the action

seeks advancement of defense costs for a Criminal Action and certain Civil Actions (Windels

App. Dec., Ex. A, ¶¶ 12, 13). However, the complaints in the actions for which Grant seeks

to have his defense costs paid were never presented to the Court below. Moreover, even

though Illinois National submitted with its opposition to the motion the S-3 Indictment

referred to in Grant's Complaint against Illinois National (Windels App. Dec., Ex. G,

Windels Aff., Ex. 1), Grant's counsel then stated on the record there was a new Indictment,

S-4, that was different from the prior indictment. It was that indictment that Grant was

urgently seeking insurance proceeds for to pay for his defense (Ex. M, pp. 11-13). Thus, on

the record before him, Judge Drain could not have properly determined whether or not the

pleadings "may be covered under the policy."

In addition, the Court below, and Grant in his opposition, rely heavily on Judge Cote's decision in In Re WorldCom, 354 F.Supp.2d 455 (S.D.N.Y. 2005). As a fundamental issue, the Court in WorldCom acknowledged the standard that the insured had to make some reasonable demonstration that he was entitled to coverage under the policy before being entitled to a preliminary injunction. "[The insured] must show… that, under the terms of the policies, he is entitled to payment of defense costs as they are incurred…" Id. at 466, 467 (emphasis added); see also Cement and Concrete Workers, 387 F.Supp.2d at 190-91 (insurer not obligated to advance defense costs where it is clear that an insured's claims are not covered under the policy). This further illustrates the error by the Court in ruling as it did without any demonstration that the pleadings at issue presented claims that could possibly be covered under the Policy. In fact, the documents that are in the record all establish there is no coverage.[6]

In establishing WorldCom as the benchmark for the criteria on preliminary injunctions in insurance coverage cases, however, the Court below overlooked significant distinctions that were relevant to that Court's granting of a preliminary injunction. They include the facts that: a) the insurer there, Continental, sought to rescind the policy, and in fact advised the insured the policy was rescinded and void ab initio as to all insureds (Id. at 456) – that is, Continental was relying upon the argument that the policy was issued in reliance upon false financial statements as the basis to deny the insured recovery of defense costs (Id. at 462), unlike the present case where Illinois National contends Grant is not

---

[6] Grant's argument in his opposing brief that the Court must consider the Order as of the time issued and not consider Grant's own conviction is moot. This Court already ordered that the Record on Appeal would be expanded to include Grant's conviction and other relevant material (see Windels App. Dec., Ex. O).

entitled to coverage based on the Policy's terms; b) the coverage suit in <u>WorldCom</u> did not involve an indicted, let alone a convicted, former officer, and coverage for a criminal proceeding was not being sought, all facts which are present in this case; c) the action was commenced seeking a declaratory judgment on the "rights, duties and responsibilities of the Excess Insurers." (<u>Id.</u> at 461), while this case seeks an injunction to compel advancement of defense costs to Grant; and d) Continental did not dispute that the claims for which WorldCom and its employees sought coverage were within the definition of covered claims (<u>Id.</u> at 462).

Grant's opposing brief also relies on <u>In Re Adelphia Communication Corp.</u>, 323 B.R. 345, 374 (Bankr. S.D.N.Y. 2005) to support its contention that financial inability of directors or officers to defend themselves has serious consequences and is irreparable (see Grant brf., p. 11). While that decision had nothing whatsoever to do with insurance coverage (the issue was approval by management of advancement of their own defense costs from certain "Managed Entities" under Adelphia's day-to-day control) <u>Id.</u> at 353-54, <u>Adelphia</u> is significant in demonstrating what was lacking, in addition to the underlying pleadings, in Grant's application to the Court below. The Court in <u>Adelphia</u> held:

> the award of an injunction requires a showing of irreparable injury. While the Rigases' motion had a fair number of deficiencies, addressed below, that is not one of them. The Court found the testimony of the Rigases' three criminal defense counsel to be candid and credible.... The Court also finds that a financial inability to defend oneself has serious consequences, and is irreparable.

<u>Id.</u> at 374. Thus, in <u>Adelphia</u> there was a presentation of evidence to show defense costs were reasonable and necessary and that the defendants were otherwise unable to pay for their own representation. <u>See also In Re Allied Digital Techs. Corp.</u>, 306 B.R. 505, 514 (Bankr.

D. Del. 2004) (without funding from the insurer, the individual insureds would be "prevented from conducting a meaningful defense...").

Consequently, the relevant criteria were not met below and certainly, in any event, are no longer applicable in this case. As demonstrated herein, plaintiff was not and is not entitled to coverage, and Grant failed in his obligation to present sufficient information to allow the Court to properly make that determination. Nowhere in his moving papers did Grant ever attempt to demonstrate that without Illinois National's funding he would have been unable to finance the type of defense he was looking to have Illinois National pay for. At most, counsel for Grant vaguely asserted that, "[m]any of Mr. Grant's assets [were frozen] by the Government." (Windels App. Dec., Ex. D, Schreiner Declaration, ¶ 2).[7] The S-3 Indictment alleges, at paragraphs 69(h) and (i), that Grant received a total of $16 million in August 2004 (Windels App. Dec. Ex. G, Windels Aff., Ex.1). Grant's counsel conceded this in Grant's Sentencing Memorandum of Law (at p. 16) filed with the court on July 18, 2008 in the action entitled <u>United States of America v. Tone N. Grant</u>, S4 05 Civ. 1192 (NRB) (ECF No. 166). Grant's counsel then also acknowledged (at p. 51) that it is likely that "[t]he government will argue that Mr. Grant stood to receive 'up to' $275 million from the public sale of Refco, at least according to the Stock Purchase Agreement."

---

[7] As the Court noted at oral argument, it was unlikely counsel would be permitted to withdraw from the representation (Windels App. Dec., Ex. M, pp. 15:8 – 15:15). The Court should keep in mind that Grant and other insureds had already been paid $27.5 million from U.S. Specialty, Lexington and Axis policies for defense costs. Grant was out-of-pocket nothing. At most, Grant's counsel's suggested that if Illinois National did not pay, his firm would "contract the number of lawyers who are available to -- and I, myself, will have to limit my presence at the trial if the funds are not there to pay for counsel." (Windels App. Dec., Ex. M, p. 17). Counsel carefully avoided saying if Illinois National did not pay, another insurer or Grant himself would not pay.

POINT III

## THE CRIMINAL, FRAUDULENT AND
## DISHONEST ACTS EXCLUSION IS APPLICABLE

Much of Grant's opposition to application of the criminal fraudulent, and dishonest acts exclusion in Clause 4(c) of the Policy rests on the unfounded assertion that since the Policy's definition of "Defense Costs" includes costs associated with "appeal of a claim against the Insureds," then the exclusion cannot apply unless and until there has been a final adjudication after an appeal. That is not so, as the argument wholly ignores the purpose of policy exclusions, such as the fraud exclusion. Exclusions are intended to remove claims from the category of what may otherwise be covered under the policy. See Federal Insurance Co. v. Kozlowski, 18 A.D. 3d at 42 ("while Federal must pay defense costs… its ultimate liability for such costs is only with respect to such liabilities as full under the coverage provided. To the extent such liabilities are excluded from coverage by the personal profit exclusion, Federal is not required to pay for defense costs."). Thus, while appellate costs may be covered for claims within the Policy's coverage provisions, that is not the case where an exclusion applies. Hence, Grant's contention that, "the conviction alone is by no means the end of Mr. Grant's involvement in the criminal proceeding…" (Grant Brf., p. 13) misses the point. Grant's "in fact" finding of guilt is the end of any potential insurance coverage. The fraud exclusion, as set forth in Illinois National's main brief (at pp. 20-23), applies once there is an "in fact" finding (Windels App. Dec., Ex. A – Complaint, Ex. A, ¶ 4(c)). This differs from those exclusions that require there to be a "final adjudication."

Grant also challenges the sufficiency of Illinois National's description of how Grant's conviction shows "in fact" that he committed "all of the criminal and fraudulent acts

23

alleged." (Grant Brf., p. 13, quoting Ill. Nat. Br. at 21). It is, however, hard to envision a circumstance where the "in fact" language is any more appropriate than it is here. Grant seeks to have Illinois National pay his defense costs incurred in defending against the S-4 Indictment. He was tried and convicted on every count of the S-4 Indictment. The S-4 Indictment accused Grant of criminal and fraudulent acts. He was "in fact" found to have committed criminal and fraudulent acts.

As to the preclusive effect of Grant's conviction, he clearly had a full and fair opportunity to present his defense. His conviction at trial is no less determinative than a guilty plea would have been. "'[A] criminal conviction, whether by jury verdict or guilty plea, constitutes estoppel in favor of the [party adverse to the defendant] in a subsequent civil proceeding as to those matters determined by the judgment in the criminal case.'" SEC v. Freeman, 290 F.Supp.2d 401, 404 (S.D.N.Y. 2003) (quoting United States v. Pudell, 572 F.2d 31, 35 (2nd Cir. 1978).

Whether or not an appeal is pending does not effect this Court's ability to preclusively apply Grant's conviction to the coverage matter. Indeed, Justice Freedman did such in Federal Insurance v. Tyco (see Ex. A to Illinois National's main brief) even though Kozlowski had appealed his criminal conviction. People v. Kozlowski, 47 A.D.3d 111 (1st Dep't 2007).

Finally, with regard to raising the fraud exclusion on this appeal, this follows the Court's order allowing expansion of the record to include Grant's conviction (Windels App. Dec., Ex. O). Illinois National indicated in its main brief (at p. 2) that it had reserved its right to raise additional defenses under the Policy when they became ripe. It is a matter of

24

judicial economy and pursuant to Illinois National's reservation of rights to assert the exclusion.

**CONCLUSION**

Based on the foregoing, it is respectfully requested that the Court reverse and vacate the Order granting plaintiff a preliminary injunction in its entirety on the basis that there is no coverage for the Criminal Action or the Civil Actions and grant such other and further relief as this Court deems just and proper, including permitting Illinois National to recoup the defense expenses it paid pursuant to the terms of the Policy.

Dated: New York, New York
        July 31, 2008

                            Respectfully submitted,

                            D'AMATO & LYNCH, LLP

By:     s/Kevin J. Windels
        Kevin J. Windels (KJW-5477)
        Stephen F. Willig (SFW-9847)
        70 Pine Street
        New York, New York  10270
        (212) 269-0927

        *Attorneys for Defendant-Appellant*
        ILLINOIS NATIONAL INSURANCE
        COMPANY

#302361v1

**AFFIDAVIT OF SERVICE VIA E-MAIL AND OVERNIGHT MAIL**

STATE OF NEW YORK )
                                          ss.:
COUNTY OF NEW YORK )

       **STEPHEN F. WILLIG**, being duly sworn, deposes and says: deponent is not a party to the action, is over 18 years of age and resides in Hazlet, New Jersey.

       On July 31, 2008, deponent served the within **DEFENDANT/APPELLANT ILLINOIS NATIONAL INSURANCE COMPANY'S REPLY BRIEF IN FURTHER SUPPORT OF ITS APPEAL OF THE BANKRUPTCY COURT'S ORDER GRANTING PLAINTIFF A PRELIMINARY INJUNCTION** upon:

Norman Eisen, Esq.
Zuckerman Spaeder, LLP
1800 M Street, N.W.
Washington, D.C. 20036-5802
neisen@zuckerman.com

Steven Wilamowsky, Esq.
Bingham McCutcheon, LLP
399 Park Avenue
New York, NY 10022
steven.Wilamowsky@bingham.com

Laura E. Neish, Esq.
Zuckerman Spaeder, LLP
1540 Broadway, Suite 1604
New York, NY 10036-4039
lneish@zuckerman.com

Michael T. Hannafan, Esq.
Blake Tyler Hannafan, Esq.
Hannafan & Hannafan, Ltd.
1 East Wacker Drive, Suite 1208
Chicago, Illinois 60601
mth@hannafanlaw.com
bth@hannafanlaw.com

the attorneys for the plaintiff and the plan administrator herein at the e-mail address designated and agreed to in writing by said person for that purpose by electronically delivering a true copy thereof, and also at the address(es) designated by said attorney(s) for that purpose by leaving a true copy of same enclosed in a pre-paid properly addressed wrapper for UPS overnight delivery.

                        s/Stephen F. Willig
                        **STEPHEN F. WILLIG**

Sworn to before me this
31st day of July, 2008

s/Kevin J. Windels
    NOTARY PUBLIC

#292957v1